EULALIE G. CALDARONE *vs.* PETER J. CALDARONE, Ex.

MARCH 8, 1927.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

(*1*)   *New Trial.*

Where the trial court finds that a verdict is not supported by the evidence, it is error to refuse to grant a new trial. Questions of expense or of a probable similar verdict are not for it to decide.

(*2*)   *Wills.   Undue Influence.*

The elements of undue influence vary so greatly that the presence or absence thereof depends upon the particular circumstances of each case.

(*3*)   *Wills.   Undue Influence.*

The opportunity to exert influence on testator or the fact that the will as drafted favors those against whom the charge of influence is made, does not establish improper influence.

PROBATE APPEAL. Heard on exceptions of proponents and exception to refusal to grant new trial sustained.

BARROWS, J.. Carlo Caldarone died of cancer, childless, on January 13, 1925, at the age of sixty-four. He had been seriously ill since September, 1924. His will, dated November 17, 1924, leaving the bulk of his property in trust for his wife for life and after her death legacies of $300 each to about twenty nephews and nieces and $5,000 to his brother Ferdinando, gave the residue to Peter J. Caldarone, a son of his brother Nicola, and made Peter the executor. It was admitted to probate by the Municipal Court in Providence and on appeal a jury in the Superior Court, after a two weeks' trial, found that it was not the will of Carlo by reason of undue influence. The influence was claimed to have been exerted by Nicola and his family. After a motion for a new trial the justice presiding, in a rescript, found that the verdict was not supported by the evidence but declined to grant the executor's motion because

he believed that "owing to the atmosphere which surrounds a case of this nature if the issues were submitted to another jury the result would be the same and the expense of trial entirely out of proportion to the value of the estate". The inventory of the estate showed approximately $12,000. The case is now before us on the executor's exceptions, first, to the refusal to grant his motion for a new trial and, second, to the refusal of the trial court to direct a verdict in favor of the will.

(1) The trial court in passing on the motion for new trial well performed its duty and gave us the benefit of its independent judgment on the facts. Its decision was more than a doubt as to the correctness of the verdict. *Spiegel* v. *Grande*, 45 R. I. 437. It was a disapproval of it. After deciding that the jury's verdict was not supported by the evidence, we think the court erred in refusing to grant the new trial. Questions as to whether the parties are better off without a new trial or whether the expense of litigation will eat up a disproportionate share of the estate or whether a second erroneous verdict will probably be reached are not for the trial court to decide. We said in *Joslin* v. *Rhodes, Rhodes* v. *Joslin,* Exs. 6253-4, (filed February 15, 1927), that the fact of a concurring second verdict was not to guide the trial justice in acting on a motion for a new trial where the verdict was asserted to be contrary to the evidence. The question for the trial justice is whether the evidence in the case heard by him supports the verdict. The "practical question" of the desirability of stopping litigation to which the rescript in this case refers is not presented to him. Counsel would not have been permitted to argue such a question on the motion for new trial and a question which is immaterial on argument can not be the basis for the court's decision. Under our system of submitting to the jury disputed statements of fact or legitimate inferences therefrom, subject to the supervisory power of the trial justice, if in the opinion of the latter the jury errs, the action that the court should take after a verdict contrary to the weight of

the evidence is to submit the case to another jury. The trial court, though it might have been exercising excellent practical judgment, did not grant to the proponents of the will their legal rights when it denied their motion for a new trial because it believed that they probably again would suffer defeat. They were entitled to this opportunity when they sought it. We have carefully examined the lengthy transcript and the trial justice's estimate in the rescript of the evidentiary value of the testimony appears to us correct. There was much useless and uncalled for repetition of statements and incidents together with sinister suggestions having no bearing on the issue of undue influence and which before the jury must have created a serious prejudice against the proponents of the will.

There remains the question whether a verdict should have (2) been directed in favor of the will. We shall not attempt to discuss the evidence at length. Undue influence has been briefly defined by this court as the "substitution of the will of another person for the free will and choice of the testator" in making the testamentary disposition. *Walker* v. *Walker*, 67 Atl. 519. The elements of undue influence vary so greatly that the presence or absence thereof depends on the particular circumstances of each case. No one here can deny that the opportunity to exert influence existed or that the will as drafted favors those against whom the (3) charge of influence is made. These facts, however, do not establish improper influence. The evidence is conflicting as to whether Carlo was susceptible to influence and if so whether attempts to exercise it were improper and if so had any effect upon him. There is testimony that Carlo complained at times of attempted influence and used expressions which indicated that he was being driven against his own inclinations. Few complaints were testified to by his wife, who better than anyone else had the opportunity to know whether attempts to unduly influence testator were made. The complaints said to have been made by Carlo were largely testified to by relatives whose interests were to break

the will.   Many of the reported sayings of Carlo were the
fretful comments of a sick man, petty and immaterial to the
issue here presented, but some of them can not be so passed
over.   The latter group comprises alleged continued im-
portunities with suggestions calculated to poison the testa-
tor's mind against some of his relatives.   The evidence of
some of the witnesses to such incidents, even in cold type,
shows a forwardness that creates an unfavorable impression.
Their continued volunteering of information and inter-
jecting statements which were uncalled for, irrelevant and
palpably intended to prejudice the jury against proponents
does not recommend acceptance of the testimony at face
value.   Numerous of these complaints were said to have
been made by Carlo after October 8, when a strikingly
similar will had been executed.   The jury, however, saw
the witnesses and could judge of their veracity and, strong
though the inferences were against undue influence, from
the similarity of the will of October 8 and the present will of
November 17, and the evidence of satisfaction by the widow
and the intimate relationship which existed between Carlo
and his brother Nicola and family, we can not say that there
was no evidence to go to the jury.   There was no error on
the part of the trial court in refusing to direct a verdict.

The exception to the refusal to grant a motion for new
trial is sustained; that to the refusal to grant the motion
for direction of verdict is overruled.   The case is remitted
to the Superior Court for a new trial.

*Pettine, Godfrey & Cambio, Albert A. Soriero,* for appellants.·
*George H. Raymond, McGovern & Slattery,* for appellee.