## L. Douglas Young *vs.* Everett F. Young, *Ex.*

JULY 6, 1936.

Present:   Flynn, C. J., Moss, Baker, and Condon, JJ.

FLYNN, C. J. This is a probate appeal from a decree of the probate court of Providence, admitting to probate and allowing a certain written instrument, dated April 19, 1932, as the last will and testament of Hattie L. Young, and appointing Everett F. Young, the proponent, as executor thereof.

An appeal from said decree was duly taken and prosecuted to the superior court by the contestant, L. Douglas Young. It sets out several reasons of appeal which substantially raise two issues, namely, whether the testatrix, at the time of making the will, possessed testamentary capacity, and whether the execution of the will was induced by undue influence, allegedly exercised upon the testatrix by Annie Hill Young and Everett F. Young. The case was tried for ten days before a justice of the superior court sitting with a jury. No special findings were requested of or submitted to the jury, which returned its general verdict that said written instrument, dated April 19, 1932, was not the last will and testament of Hattie L. Young.

The proponent duly filed his motion for a new trial based upon the usual grounds, and also upon alleged newly discovered evidence. The last-mentioned ground was not supported and was expressly abandoned by him at the hearing before the trial justice upon the motion for a new

trial. This motion was denied by the trial justice and the case is now before us on the proponent's bill of exceptions, which sets out thirty-two exceptions taken by him during the course of the trial and his further exception to the ruling of the trial justice in refusing to grant his motion for a new trial. All but five of these exceptions have been expressly waived by the appellant in his brief before us, so that we are concerned here with only his fourth, thirteenth, twenty-ninth, thirty-first and thirty-third exceptions. For purposes of identification, the fourth exception concerns the admission of certain so-called "wire-tapping" testimony; the thirteenth exception relates to the denial of the proponent's motion for the direction of a verdict sustaining the will; the twenty-ninth and thirty-first exceptions relate to the refusal of the trial court to charge in the exact language presented by the proponent's sixteenth and eighteenth requests to charge; and the thirty-third exception relates to the ruling of the trial justice in denying the proponent's motion for a new trial.

The record discloses, among other things, that Hattie L. Young, the widow of Frank N. Young, died in Providence on May 6, 1932, in her sixty-eighth year, as a result of a malignant form of cancer. She left surviving her two sons, L. Douglas Young and Everett F. Young, who are the parties to this case; several grandchildren, who are children of her said sons; and Annie Hill Young, her sister, who had married Arthur E. Young, a brother of Frank N. Young, deceased husband of the testatrix. She owned a two-family house in Providence in which she occupied the upper tenement, while her son, the contestant, with his wife and family occupied the lower one. She was fairly active in church affairs and enjoyed reasonably good health until early in February, 1932, when her increasing ailment caused her to seek medical attention. Prior thereto, she had made two wills at times when there was no question made of her testamentary capacity; the first, when all the related persons were on very cordial terms, and the second, on

August 25, 1931, when the testatrix knew of the friction and bitterness existing between the contestant on the one side, and the proponent and his aunt, Annie Hill Young, on the other.

This second will made no change in the substantial and equal benefits provided for the proponent and contestant, but merely added a legacy for another grandchild, who had been born since the former will, and also named the proponent as sole executor, where formerly both sons were named as joint executors. Both these wills were drawn by a lawyer who had represented the testatrix for many years. On February 16, 1932, the day she entered the hospital after a specialist in Boston confirmed her own physician's diagnosis, she executed a third will through the agency of another lawyer, largely suggested and arranged for by the proponent and his "Aunt Annie," as she was referred to in the testimony. The testatrix returned home from the hospital on March 22, 1932, and grew constantly weaker physically and mentally from the effects of the disease. On April 19, 1932, she executed at her home a fourth will, allegedly when she was too weak physically and mentally to do so, and while under the continued undue influence of the proponent and his aunt, who allegedly knew the contestant was to be out of town on that day. The same lawyer, suggested originally by the proponent or his aunt, drew this fourth will, which eliminated the church and all grandchildren from any benefits and gave the proponent the far greater portion of her estate. This last will is the instrument in question on this appeal which is before us on the proponent's bill of exceptions.

Four questions are presented by the proponent's exceptions, viz. Did the trial justice err (1) in refusing to grant the proponent's motion for the direction of a verdict sustaining the will of Hattie L. Young; (2) in admitting certain so-called "wire-tapping" testimony; (3) in refusing to grant, in the exact language as requested, the proponent's sixteenth and eighteenth requests to charge; (4) in denying

the proponent's motion for a new trial. These questions will be discussed in this order under the exceptions appropriate thereto.

The thirteenth exception relates to the refusal of the trial justice to grant the proponent's motion to direct a verdict sustaining the will in question. It is well established that the trial court should not grant a motion to direct a verdict where the evidence on material issues is conflicting, since the trial court on such a motion does not determine the preponderance of the evidence or credibility of the witnesses but determines only whether there is any legal evidence to support the contention of the adverse party. It is equally well settled that, for the purpose of such a motion, the court will consider as true all the evidence submitted on behalf of the adverse party and will resolve all the reasonable inferences from the evidence most favorably to the contention of the party opposing the motion. A verdict should not be directed for any party if on any reasonable view of the testimony the opposite party can prevail. *Talbot* v. *Bridges,* 54 R. I. 337; *Saunders* v. *Kenyon,* 52 R. I. 221; *Reddington* v. *Getchell,* 40 R. I. 463. Moreover, this court has held consistently that the issue of undue influence upon a testatrix may be established by indirect or circumstantial evidence equally as well as by direct evidence. *Goff* v. *Clinton,* 53 R. I. 70, at 75; *Talbot* v. *Bridges, supra.*

Applying these principles of law to the evidence here, we are satisfied that there was ample evidence, and inferences therefrom, to present a clear conflict and to require that the issues be determined by a jury. In our opinion the trial court would have erred if it had granted the proponent's motion to direct a verdict sustaining the will. The proponent's thirteenth exception is without merit and therefore is overruled.

The fourth exception relates to the admission, over the proponent's objection, of certain so-called "wire-tapping" testimony. The contestant and his wife testified that they

had listened in upon conversations taking place over the telephone of the testatrix in which Annie H. Young, or the proponent, or the attorney who drew the will in question, was talking to the testatrix or her maid, or with one another. The method employed to listen in was accomplished by clamping radio head phones on the wire of the telephone of the testatrix, thus permitting the listeners to hear at various times certain conversations pertinent to the issues involved. Notes of these conversations were made at the times on scrap paper, from which the contestant later dictated their substance to a stenographer who transcribed them. This latter typewritten memorandum was not admitted in evidence, nor permitted to go to the jury, but the witnesses, the contestant and his wife, were permitted to use it solely to refresh their memories as occasion demanded.

The proponent argues strongly that this direct evidence, which is otherwise admissible, is inadmissible because it was obtained surreptitiously, but he presents no authority to substantiate this contention. Indeed, he admits in his brief his inability to find any such authority, and none has come to our attention which would render this evidence inadmissible. In the instant case, the identity of all of the parties to the telephone conversations was admittedly well known to the witnesses and properly testified to before introducing testimony of the conversations. The evidence was not obtained by the commission of any crime, or through coercion; nor is its admissibility or method of acquisition controlled or prohibited by any statute. No part of the wire was damaged or destroyed; the free transmission of the message was preserved, and the communication itself was not diverted or distorted by the intrusion of the clamp and listeners upon the wire. The question is whether or not the statements allegedly heard by listening in through this device, in the circumstances of this case, are admissible or not.

We are inclined to agree generally with a characterization by the late Justice Oliver Wendell Holmes, quoted by the proponent that the method of obtaining evidence by "wire-tapping" constitutes "dirty business," but it has been upheld as legally admissible in criminal cases in the United States, where the defendant seemed to have raised a very strong objection under the protection granted him by the constitution. *Olmstead* v. *United States*, 277 U. S. 438, (1928); *United States* v. *Lee*, 60 Fed. (2d ed.) 294, (1932). There would seem to be no more, if as much, logical objection to its admissibility in a civil case. It is extremely difficult to see any fundamental difference in legal effect between the testimony of such a conversation, where the proper foundation by identification is first made, and testimony of a conversation intended confidentially for one person but which is overheard by a casual passerby or by an eavesdropper. In the instant case, the parties to these alleged conversations did not expressly deny their presence at the times and places or the fact of their having some telephone conversations, as indicated, but did deny the substance and truth of alleged statements offered in evidence.

The rule in this state in civil cases governing the introduction of such testimony concerning telephone conversations, where proper foundation and identification is first made, seems to be in harmony with the above authorities. See *McNear* v. *American & British Mfg. Co.*, 44 R. I. 190; *Donahue* v. *The Reiner Co.*, 46 R. I. 302; *Goff* v. *Lunn*, 49 R. I. 455; *Going* v. *Vallessi*, 52 R. I. 113.

In the absence of any showing of authority or of statute or of any common law rule of evidence requiring a contrary conclusion, we are constrained to hold that the proponent's objection went to the weight and not to the admissibility of the testimony. The trial court, in our opinion, did not err in this respect, and the fourth exception is overruled.

The twenty-ninth and thirty-first exceptions deal respectively with the proponent's sixteenth and eighteenth

requests to charge and the refusal of the trial court to grant either of them in the language as specifically requested. They are as follows: "In order to avoid the will of Hattie L. Young, the jury must be satisfied by a preponderance of the evidence that influence was used such as to amount to force and coercion destroying the free agency of said Hattie L. Young, and there must be proof that said alleged will was obtained by this coercion, and it must be shown that circumstances of its execution are inconsistent with any hypothesis but undue influence, which cannot be presumed, but must be proved, and in connection with the will and not with other things. Neither advice, nor arguments, nor persuasion would avoid the will of Hattie L. Young if the will was made freely from conviction, though such will would not have been made but for such advice or persuasion."

"It is not sufficient to show that circumstances attending the execution of the will are consistent with the hypothesis of its having been obtained by undue influence, it must be shown that they are inconsistent with the contrary hypothesis."

Both of these requests are open to the objection that they overlook the burden upon the proponent, under our well established law, to prove that the testatrix possessed testamentary capacity, and that the language was apt to confuse rather than assist the jury. Moreover, that part of each request which would require the contestant to prove that "it must be shown that the circumstances of its execution are inconsistent with any hypothesis but undue influence," states too broadly the rule relating to the proof necessary to establish this issue. As requested, they would have, to say the least, the practical effect of requiring proof beyond a reasonable doubt of this issue in a civil case. Such is not the rule in this state, however it may be interpreted elsewhere. This court has held consistently that the trial court is not required to charge in the exact language of the requests to charge. It is not the privilege of

counsel to dictate the exact words which shall be used in the charge. Where the law, pertaining to the issues, is stated correctly by the court in its general charge, there is no error. *Parenteau* v. *Parenteau*, 51 R. I. 263, at 266; *Revens* v. *Berth*, 147 A. (R. I.) 751; *McGowan* v. *Probate Court of Newport*, 27 R. I. 394.

In the instant case, the trial justice gave a very careful and comprehensive instruction to the jury on the law governing the evidence and issues of the case. All of the elements of the above requests, excepting the objectionable parts, were substantially complied with by the trial court in its general charge. A reading of the whole charge impresses us with the fact that the trial court adequately and correctly covered the essential elements underlying the issues in the case, and the necessary law applicable thereto. Some indication of its character and correctness is obtained from considering that counsel for neither party asked for any exception to the charge as given by the court, and further from the fact that only two of the nineteen specific requests to charge, as submitted by the proponent, are brought here for review. The twenty-ninth and thirty-first exceptions are therefore overruled.

The thirty-third exception relates to the ruling of the trial justice in refusing to grant the proponent's motion for a new trial. The question presented by this exception is not whether another finding, if made from conflicting evidence, might have been justifiable, but rather whether the trial justice was clearly wrong in denying the motion for a new trial. Unless the proponent can show that the evidence so overwhelmingly preponderates against the verdict, which is approved by the trial justice, that it fails to do substantial justice between the parties, his exception under our well established practice must be overruled. *Wilcox* v. *Rhode Island Co.*, 29 R. I. 292; *Gallo* v. *Simpson Spring Co.*, 55 R. I. 410.

The record discloses evidence which, if believed, would justify and support the finding of the jury. The jury

might reasonably have found from the evidence, and inferences therefrom, that the testatrix was always subject to the influence of others, particularly of her sister, Annie; that for a period of a year or more the proponent and his aunt Annie, individually and in concert and cooperation, pursued a course of action deliberately designed to wrongfully change the testatrix's friendly attitude toward the contestant, and to bring about a change in her will so as to dispose of her property in accordance with the desire and design of the proponent and his aunt; that these efforts created and took advantage of opportunities to unduly influence the testatrix in this regard; that her will of August 25, 1931, following a settled plan of a former will, correctly expressed her own will and desire to remember her church and her grandchildren, and to make no substantial discrimination between her sons; that she knew, before making this second will in August, 1931, of the difficulties in the business, resulting finally in the discharge of the contestant by interests controlled by the proponent and the husband of Annie H. Young, as well as the contestant's affiliation with a competing concern; that notwithstanding this knowledge of the bitter feeling between him and the others, she remained continuously on cordial terms with the contestant and his family; that her change in the will of August 25, 1931, making the proponent sole executor, where formerly both sons were named as joint executors of her will, was made in the interest of order and was accompanied by the hope expressed to her attorney, that conditions would soon clear up between her sons, so that she could rename both as joint executors in her will; that no other substantial changes were contemplated, desired or made by her; that no essential change in either her property or relations with any of the objects of her bounty—her church, her grandchildren or her sons—or in her own disposition, had taken place between August 25, 1931, and early February, 1932, which dictated any need for a new will before she entered the hospital and none

would have been made except for the alleged undue influence of the proponent and his aunt; that they, without specific authority from the testatrix and in furtherance of their own plan, managed to obtain possession of her above-mentioned will, from the attorney of the testatrix who had represented her for years; that the proponent and his aunt then learned the contents of that will from the new attorney, who had been used to obtain the will in question; that they initiated the idea of having the testatrix execute a new will on the erroneous representation that it was invalid because of ambiguity; that by interference and importunities and imposition they succeeded in causing the testatrix to execute a third will through this other attorney, on February 16, 1932, the day she was leaving for the hospital; that during her stay in the hospital, attempts were made to prevent the contestant from seeing his own mother; that his meeting with her in the hospital and her attitude there indicated no change in her own original friendly attitude toward him; that she returned from the hospital without cure and grew constantly weaker from the ravages and results of the disease; that the need for a fourth will was suggested to and pressed upon her by the proponent and his aunt and it was finally drawn by the same attorney who had drawn the will of February 16, 1932; that this fourth will, which is the one in question, was executed at a time when the testatrix was extremely weak in mind and body, and as one of a continued series of events wherein the interference by the proponent and his aunt with the affairs of the testatrix had continued to the extent of imposing upon her their desire to dispose of her property as they designed, and contrary to her own volition, as expressed by her when her capacity was unquestioned and her free agency was not overcome and coerced.

The jury may reasonably have believed that the actions of the proponent and his aunt, as disclosed by the wire-tapping testimony, continued thereafter to the time of the execution of her last will and were wholly inconsistent with

any kindness or consideration or mere desire to render assistance to the testatrix, but rather were impositions that deprived her of her free agency and caused unhappiness; that they did unduly influence the testatrix when she was too weak physically and mentally to resist. These and other inferences favorable to the contestant could fairly have been drawn and found by the jury from the evidence, if it was believed; and the jury apparently did believe that there was a preponderance of credible testimony in behalf of his contention.

On the other hand, it is quite true that there was also other evidence, direct and circumstantial, in conflict with this view, which, if believed by the jury, would have supported the conclusion that the will should be sustained. However, the presence of legal evidence to support the contestant's contention and the resulting conflict distinguishes the instant case from the facts of those cases relied upon by the proponent. The case was carefully and exhaustively tried by able and experienced counsel; much evidence was introduced which gave the entire background of social, business and family relationships bearing upon the issues; the jury and trial justice had the opportunity of seeing and hearing witnesses as they testified, which we do not have; the evidence was clearly conflicting and the jury's verdict received the approval of the trial justice. From our review of the transcript of evidence, we cannot say that the proponent has established manifest error on the part of the trial justice in refusing to grant the proponent's motion for a new trial, or that the evidence so preponderates against the verdict as to do substantial injustice. The thirty-third exception, therefore, is overruled.

The case is remitted to the superior court for further proceedings following the verdict.

*Comstock & Canning, Edward M. Brennan, Andrew P. Quinn,* for appellant.

*C. Leslie Cordery, McGovern & Slattery, James A. Higgins,* for appellee.