243 A.2d 104.

JOSEPH R. MARCINKO *vs.* ANNA L. D'ANTUONO AND JOHN MARCINKO, *Executors u/w of* ANICET MARCINKO.

JUNE 14, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PER CURIAM. This cause was heard before a justice of

the superior court sitting with a jury on the appeal of the plaintiff, sometimes hereinafter referred to as the contestant, from a decree of the probate court of the city of Providence admitting to probate a written instrument dated October 11, 1958, purporting to be the last will and testament of his father, Anicet Marcinko, who died on October 20, 1961. The decree granted letters testamentary to the defendants Anna L. D'Antuono and John Marcinko, sometimes hereinafter referred to as the proponents, who are the sister and brother of the contestant and the persons named as executors in the instrument in question.

This dispute arises from the fact that the purported will provides for his brothers and sisters, but disinherits the contestant. The issues presented raise the following questions:

1. Whether said Anicet Marcinko was induced to sign the said instrument purporting to be his last will and testament by and through undue influence exerted upon him by other persons.
2. Whether said Anicet Marcinko, at the time of the alleged signing of said instrument, comprehended the nature and intent of said document, understood the contents of said document, and intended that the said Joseph R. Marcinko, the contestant, should be left without any bequest or devise.

It may be helpful to state at the outset that during the trial in the superior court contestant stipulated that his brother John Marcinko was the only person charged by him to have exerted undue influence on the testator and that there was no suggestion that his father was mentally incompetent at the time he signed the purported will. Additionally, we note that the trial justice charged the jury that there was no contention of fraud and that therefore the jury was not to consider the question of fraud. No objection having been made to this portion of the charge, it became the law of the case.

After the parties rested, the proponents moved for a directed verdict on both issues. The trial justice reserved

decision thereon under rule 50 (b) of the rules of civil procedure of the superior court and submitted the case to the jury, which found that the instrument in question was not the last will and testament of Anicet Marcinko. The trial justice then denied proponents' motion for a directed verdict. See *Renault* v. *John Hancock Mutual Life Ins. Co.*, 98 R. I. 213, 220, 200 A.2d 588, 591. Judgment was accordingly entered sustaining contestant's appeal and vacating the decree of the probate court.

The trial justice thereafter also denied proponents' motion for a new trial.

The cause is before us on proponents' appeal from the judgment entered in this action. The appeal challenges the correctness of the trial justice's orders denying their motions for a directed verdict and for a new trial, as well as certain rulings denying their requests for certain instructions.

Anicet Marcinko and his wife, Agnes, were born in Lithuania. They had two daughters, Anna L. D'Antuono and Eva Waskiel, and three sons, George, John and Joseph. At the time he executed his will, Anicet could neither read nor write although with some difficulty he was able to sign his name. Neither could he speak nor understand the English language with any degree of competency. After his retirement in 1952, Anicet and his sons engaged in a small business venture which involved the construction and remodeling of houses. In 1954, a dispute arose between Joseph and his brother John over the payment of a bill. The dispute subsequently involved Anicet and his wife and resulted in strained family relations. After this dispute, Joseph and John ceased speaking to each other.

From 1948 to 1955 Joseph and his family lived on the first floor of the home owned by his parents, his parents and his brother John occupying the second floor. In 1955 Joseph and his father discussed their business affairs. Anicet

offered Joseph $500 to settle their affairs but Joseph refused the offer and he subsequently received notice to vacate the tenement he was occupying. He moved and never visited his parents at their home thereafter.

In 1956 Joseph brought an action against his father in the superior court for an accounting and other relief. It appears from the testimony in the instant case that sometime after Joseph brought the action against his father, his father and mother consulted an attorney and executed separate wills, both of which disinherited Joseph. After his mother's death in 1958, Joseph contested her will. Thereafter his father consulted the same attorney and executed the instrument involved in this appeal, in which he again failed to provide for Joseph. Sometime thereafter the father became sick and he died in 1961.

The purported will is witnessed by Benjamin C. Chester and his secretary Marie E. Stone. Insofar as pertinent here it contains the following provisions: His children John and Anna are the named executors; all his real estate is devised to his children John, Anna, Eva and George; the residue of the estate is to be divided equally among the same four children; additionally the will contains the following provisions:

"Ninth:—I intentionally omit making any provision for my son Joseph Marcinko or for the issue of my said son Joseph Marcinko whether presently born or born after the execution of this will, and whether or not my son Joseph Marcinko predeceases or survives me. I make this provision in view of the difficulty which my said son Joseph has caused myself and my wife, especially the litigation in which he has involved me.

"Tenth:—I direct that the Executors or Executor or Executrix, as the case may be, of my estate, engage Benjamin C. Chester as attorney to represent the said estate and the previous nomination of my Executors is conditioned upon the said Executors carrying out this said direction."

We have outlined in a general way the events which resulted in the instant appeal. At the trial in the superior court the proponents and the contestant presented witnesses on their behalf whose pertinent testimony can be summarized as follows. The first witness presented by proponents was Benjamin C. Chester, the attorney who drafted the purported will. He testified that Anicet, upon the death of his wife, had asked him to make minor changes in his will executed on June 22, 1956; that he did so in accordance with Anicet's instructions to disinherit Joseph because his son had brought a law suit against him and had refused to pay him rent in 1956; that the will was written in English but translated by him, one paragraph at a time, into Lithuanian for the benefit of Anicet who, as we have mentioned previously, had difficulty understanding English; that the will was witnessed by Marie E. Stone, his legal secretary, and by himself; that Anicet signed in the presence of both witnesses and the witnesses signed in the presence of each other and in the presence of Anicet at his request; and that Anicet was over twenty-one and was of sound mind.

Marie E. Stone corroborated Mr. Chester's testimony with respect to the formal execution of the instrument and added that Anicet did not read the instrument in her presence.

Joseph, as well as his wife Helen, testified in opposition to the purported will and in support of his contention that it was not the last will and testament of his father. Joseph stated that John constantly argued with his parents; that John had threatened him; and that John had been responsible for his eviction in 1955. Joseph added that shortly before his father's death, he received a call from his sister, notifying him that his father was in the hospital and wished to see him; that he went to the hospital with his wife; that his father began to cry when he saw him and described him as his best son; and that his father said:

"* * * that Johnny made the papers and all the children are going to get an equal share. * * * And hurry up with the other case, and as long as I'm still alive, I'll still help you."

Helen corrobrated her husband's testimony and added that her mother-in-law had told her that John constantly hollered and carried on in their home and that neither she nor her husband could stand it.

In rebuttal the proponents presented the testimony of Eva Waskiel and Anna L. D'Antuono. Eva testified that her parents got along very well with her two brothers, George and John but not that well with Joseph. Anna corroborated this testimony as to her parents' relationship with George and John but had no opinion as to their relationship with Joseph.

We note that neither John nor George were called as witnesses.

## I. The Motion for a Directed Verdict

The proponents have briefed and argued their objection to the denial of their motion for a directed verdict sustaining the will[1] under two grounds which we shall consider, for convenience, in the order raised.

### A. Knowledge of Contents

The proponents contend that there was no evidence from which a jury might reasonably have found that at the time Anicet signed the purported will on October 11, 1958, he did not know what it contained and did not intend to disinherit his son Joseph. On the contrary, the contestant, Joseph, argues that the evidence is such that reasonable minds could differ on this question, and since reasonable inferences could have been drawn either way from such evidence the issue was properly left to the jury. We agree with contestant's view.

---

[1] The motion for a directed verdict was made pursuant to rule 50 of the rules of civil procedure of the superior court.

In considering proponents' instant objection we are not concerned with any claim that Anicet Marcinko was of unsound mind when he signed the purported will or that it was not executed in accordance with required statutory formalities. The contestant has stipulated that there was no suggestion that his father was mentally incompetent when he signed the instrument in question and he presented no evidence to contradict that of proponents establishing compliance with all statutory requirements relating to the execution of a will. The narrow question raised by this objection is whether the trial justice erred in submitting the issue of knowledge of contents to the jury and, of course, this depends on whether there is any competent evidence from which the jury could have found, directly or by reasonable inference, that Mr. Marcinko did not know what the instrument he signed contained and that it did not represent his instructions to the attorney who drew it.

The proponents rely heavily on *Quaratiello* v. *Di Biasi,* 43 R.I. 325, 112 Atl. 215, which involved this same problem. The testator in that case did not understand English, the language in which the will was written. The scrivener there drafted the will in accordance with information given to him by the testator through an interpreter. Certain heirs at law filed an appeal to the superior court from the decree of the probate court admitting the instrument to probate as the last will and testament of the testator. The appeal was heard before a jusice of the superior court sitting without a jury. At that hearing the heirs at law contended that the evidence presented was insufficient to establish the instrument as the last will and testament of the testator on the ground that it had not been "* * * shown by any competent testimony that the testator knew and understood its contents and meaning." After the hearing the trial justice rendered a decision sustaining the will and dismissing the appeal.

In sustaining the trial justice in *Di Biasi, supra,* at 328, 112 Atl. at 216, this court expressly approved the well-established rule that a person who does not understand the language in which the instrument is written may make a valid will with the assistance of an interpreter.

> "There is always a presumption that a man knows the contents of a writing which he signs until the contrary is shown and this presumption applies with peculiar force to wills. * * *"

See also 94 C.J.S. Wills, §130, and 1 Page on Wills, §§5.8 and 5.9. No citation of authority is needed for the proposition that in order for an instrument to be held valid as a will, it is essential that the testator should have knowledge and understanding of its provisions and that if he did not have such knowledge or understand its contents, the instrument is not a valid will. We agree that on the state of the record when proponents moved for a directed verdict they had the benefit of a presumption that Anicet Marcinko knew the contents of the instrument which he had signed. But the question presented to the trial justice by proponents' motion was whether there was any competent evidence in the record to overcome that presumption.

In passing on such motion the authority of the trial justice was governed by a well-established practice which has been approved by this court in a long line of cases. It is the duty of the trial justice, in passing upon such a motion, to view, in a light most favorable to the adverse party, all the evidence and the reasonable inferences to be drawn therefrom, and a verdict should not be directed unless the only reasonable finding or inference that can be made is against the adverse party. In considering such a motion, the trial justice cannot pass upon questions of credibility of the witnesses or weight of the evidence, but will consider as true all the evidence submitted on behalf of the adverse party and will resolve all the reasonable in-

ferences in favor of the contention of the party opposing the motion. *Young* v. *Young,* 56 R.I. 401, 405, 185 Atl. 901, 903; *Dawley* v. *Congdon,* 42 R.I. 64, 71, 105 Atl. 393, 396.

As we have indicated previously we agree with the law stated in *Di Biasi, supra,* but we point out here that factually there are some material differences between that case and the case at bar. Without indulging in a lengthy discussion of such differences or of the events in the instant case, our examination of the transcript satisfies us that there existed an important controverted issue of fact, namely, whether or not Anicet Marcinko knew and appreciated the contents of the document he signed. Since in our opinion this was a factual issue on which reasonable men can differ, it would have been inappropriate to grant a directed verdict for the defendant. See 5 *Moore's Federal Practice* (2d ed.), ¶50.02[1] at 2317. In such circumstances the issue was properly left for the jury's determination.

### B. Undue Influence

We come next to proponents' objection to the denial of their motion for a directed verdict on this issue of undue influence. They argue that there was no competent evidence from which a jury could reasonably have found that Anicet Marcinko was induced to sign the instrument in question through undue influence exerted on him by his son John. They therefore contend that the trial justice erred in denying their motion for a directed verdict on this issue. We do not agree.

In *Caldarone* v. *Caldarone,* 48 R.I. 163, 165, 136 Atl. 489, 490, the court said:

"* * * Undue influence has been briefly defined by this court as the 'substitution of the will of another person for the free will and choice of the testator' in making the testamentary disposition. * * * The elements of undue influence vary so greatly that the presence or absence thereof depends on the particular circumstance of each case."

And in *Goff* v. *Clinton*, 53 R.I. 70, 75, 163 Atl. 747, 749-50, the court said:

"The burden of proof of undue influence is on the contestant of the will. To sustain this burden direct evidence is not indispensable. From the nature of the issue circumstantial evidence is often the only evidence which can be presented. The circumstances relevant to each case and the reasonable inferences therefrom are often of more persuasive weight in the decision of the issue of undue influence than the statements of interested witnesses. See *Mullen* v. *McKeon*, 25 R. I. 305; *Huebel* v. *Baldwin*, 45 R. I. 40."

Only recently the problem relating to the difficulties involved in proving undue influence were considered by this court in *Apollonio* v. *Kenyon*, 101 R. I. 578, 593-594, 225 A.2d 778, 787, where this court said:

"When we focus our attention on the issue of undue influence, it is well established that our decisions on this question have recognized the difficulty of proof of this ground in a contest of a will and we have stated that those exerting such influence do it secretly and in such a manner that as a consequence proof of the existence of undue influence must often be proven by circumstantial evidence. *Smith* v. *Smith*, 54 R. I. 402, 173 A. 539. Facts and inferences which when considered singly are of slight and different degrees of evidentiary weight may often, when considered in combination, properly be held to furnish sufficient proof of undue influence. *Huebel* v. *Baldwin*, 45 R. I. 40, 119 A. 639; *Goff* v. *Clinton*, 53 R. I. 70, 163 A. 747; *Marsh* v. *Rhode Island Hospital Trust Co.*, 67 R. I. 229, 21 A.2d 540; *Brousseau* v. *Messier*, 79 R. I. 106, 84 A. 2d 608."

And in *Huebel* v. *Baldwin*, 45 R. I. 40, 45, 119 Atl. 639, 641, this court said:

"* * * the failure of a party to the action, who is present in court, to testify in explanation of testimony adverse to him may properly be considered by either court or jury as an admission of either inability or unwillingness to meet the issue."

It is true, as proponents argue and as this court said in

*Campbell* v. *Rhode Island Hospital Trust Co.,* R. I., 125 Atl. 220, 221:

> "* * * evidence of opportunity, unaccompanied by evidence, direct or indirect, that such influence was exerted, does not warrant the submission of the issue to the jury, nor will it support a finding that the instrument was the result of undue influence."

With these principles of law to guide us, we address ourselves to the narrow issue presented by proponents' instant objection. As we stated in considering their contentions under point I (A) the duty of the trial justice was governed by well-defined rules, which require no repetition here. The only question before him was whether, viewing the evidence in the light most favorable to the contestant, there was any competent evidence from which the jury could reasonably infer that undue influence had been exerted by John Marcinko on his father with respect to the instrument in question.

Keeping in mind that in passing on such a motion, neither the trial justice, nor this court on review, is concerned with the weight of evidence or credibility of testimony, it is our opinion that there was some evidence which required the submission of the case to the jury. The testimony relating to John's conduct, if believed by the jury, and the failure of the proponents to call him as a witness, *Huebel* v. *Baldwin, supra,* were factors from which inferences favorable to contestant could have been drawn by the jury.

We find no error in the trial justice's ruling denying proponents' motion to direct a verdict on this issue.

II. Rulings Denying Requests for Instructions

The proponents' contentions that the trial justice erred in refusing to grant their request for instructions Nos. 11 and 4 have been answered by our disposition under Point I of this opinion. The proponents have expressly waived their objection to the failure of the trial justice to grant

their request for instruction No. 5.

The proponents next contend that the trial justice erred in refusing to grant their request for instruction No. 8 which reads as follows:

"If a person signs an instrument knowing that it is a will, the instrument cannot be upset as his will because it contains provisions different from what he thought it contained unless fraud or undue influence was perpetrated upon the testator."

The proponents declare their request is based on certain statements appearing in 57 *Am. Jur.*, Wills, §375. A careful reading of this section, however, indicates that it pertains to the validity of a will the execution of which has been induced by a mistake of law or fact. Such an issue, however, was not before the superior court in the instant case. We find therefore proponents' requested charge to be inapposite and properly refused by the trial justice.

The proponents have briefed and argued a further contention, that the trial justice also erred in not granting their request for certain other instructions identified in the record as request for instruction No. 10. Since their contention was based upon the correctness of their request to charge which we have just discussed, our upholding of the trial justice's refusal to grant request No. 8 is dispositive of this particular issue and makes any discussion of proponents' additional request pointless.

### III. The Motion for a New Trial

The duty to be discharged by a trial justice in passing upon a motion for a new trial has been clearly set forth in *Barbato* v. *Epstein,* 97 R. I. 191, 196 A.2d 836. There we said it was the obligation of a trial justice to review independently all the material evidence in light of his charge to the jury and to pass on the weight thereof as well as the credibility of the witnesses. After a process of accepting, rejecting and inferring in conformance with the guidelines set forth with some particularity in *Barbato,*

the trial justice must decide which of two alternative rules to follow. If, upon his examination of the evidence, he believes the evidence and the state of the record is so even that differing minds of reasonable men could come to different conclusions thereon, he is constrained by law to affirm the jury's verdict and deny the motion notwithstanding any doubts he may personally entertain as to the correctness of the result reached by the jury.

On the other hand, if his independent, more experienced examination of the evidence leads him to the conclusion that the jury's verdict is contrary to the fair preponderance of the evidence and thereby fails to respond to the true merits of the controversy and to administer substantial justice, he is obligated to set aside the verdict and grant a new trial. In addition, it behooves a trial justice to relate his conclusions and inferences relative to the evidence, and his decision should disclose the reasons for his determination of the motion as well as the points of evidence on which he relies. *Israeloff* v. *Whitehall Taxicab Co.,* 96 R. I. 231, 190 A.2d 588.

It is clear, therefore, that before a trial justice can choose which route he is to follow when deciding a motion for a new trial he must make an independent judgment as to the credibility of the witnesses and the weight of the evidence.

Here the verdict reached by the jury was a general one. No special findings were requested. We cannot determine whether the jury's verdict was based on its conclusion on the issue of whether the testator knew and understood the contents of the document he signed on October 11, 1958 or on the issue of alleged undue influence practiced on him by his son John. However, as we stated in *Apollonio* v. *Kenyon,* 101 R. I. 578, 225 A.2d 778, if the verdict can be sustained on either ground, it shall stand. For reasons which follow we shall only discuss the first issue, to wit, did the testator know and understand the dispositive pro-

visions of the instrument purported to be his last will and testament.

In discussing the issue of whether Mr. Marcinko had knowledge of and appreciated the contents of his purported will, the trial justice observed that the credibility of Mr. Chester was at issue on this phase of the appeal. Indeed, we believe that Mr. Chester's testimony was the keystone to proponent's case. The superior court justice stated that if he had been hearing this appeal without a jury, he would have accepted Mr. Chester's testimony because he had known him and the members of his firm for many years; that he had a high regard for them; and that the personal and professional reputation in the community was excellent. ·

But the trial justice then said that he could not properly take notice of this personal extra-judicial information relative to his acquaintanceship with Mr. Chester in deciding a motion for a new trial. We agree with his comment in this regard. Immediately thereafter the trial justice referred to the case of *Anderson* v. *Johnson,* 59 R. I. 241, 195 Atl. 240, specifically to that portion thereof which contains our oft-cited rule:

> "* * * when the evidence is such that different minds may reasonably and fairly come to different conclusions therefrom, the trial justice should not disturb a verdict of the jury, even though his own personal judgment might incline him to a contrary conclusion."

At this point, the trial justice remarked that in the present case the jury could have found that Chester was not an "impartial witness." By way of explanation, he pointed out that the attorney Chester had participated in the litigation involving Joseph; that in the instant proceeding he participated actively in the conduct of the hearing as counsel; and that, based on all this, plus the unique provisions of paragraph Tenth of the will, which made the appointment of the executors contingent on their retain-

ing Mr. Chester as attorney for the estate, the jury could well have found that he was "adversary" in this proceeding, and accordingly, it was free to attribute no weight to his testimony.

While we concur in the law cited by the trial justice relative to the function he is expected to perform in considering a motion for a new trial, we are of the opinion that he has not applied his independent, more experienced judgment on the issue of Chester's credibility. In reviewing Chester's testimony, the trial justice merely indicated his personal reasons why he thought the jury could have disbelieved the witness without revealing his own conclusion as to Chester's credibility. Nowhere in his written decision can we find a definitive statement by him as to his impression of Chester's believability based upon his independent analysis of the witness's testimony and in light of the opportunity afforded him to view the demeanor of the witness on the stand. Consequently, the weight ordinarily accorded to a trial justice's decision on a motion for a new trial cannot be given in this case. *Bradley* v. *Brayton,* 61 R. I. 44, 199 Atl. 741. Thus, the trial justice having failed to fulfill that which is asked of him on the motion for a new trial, it becomes necessary for us to examine independently the transcript of evidence without the assistance we ordinarily receive from the findings of the trial justice on these motions. In this endeavor, we are obliged to adhere to the rule of an appellate court which requires us to disturb the jury's verdict only in the event we find the evidence strongly preponderates against it. *McMahon* v. *Rhode Island Co.,* 32 R. I. 237, 78 Atl. 1012; *Spiegel* v. *Grande,* 45 R. I. 437, 123 Atl. 560.

From our examination of the transcript we believe that the jury could have felt that Mr. Chester, while believing in good faith that he had accurately communicated the contents of the will to the testator, had failed to convey to him the precise nature of the instrument's dispositive

188

provisions to the full understanding of the testator. Such a conclusion is bolstered by the testimony of Joseph Marcinko and his wife Helen, which, if believed, was a clear indication that the testator was under the impression that under his will all of his children were to share equally in his estate. In addition we note that other than Mr. Chester's testimony there is no direct evidence that the contents of the purported will were ever translated or clearly explained to the testator.

In our view, on the strength of the evidence in the record relative to Anicet Marcinko's knowledge of the contents of his will, we are unable to say that the evidence strongly preponderates against the verdict which the jury reached; this being so, we will not disturb it.

The proponents' appeal is denied and dismissed, the judgment appealed from is affirmed.

*David J. Kehoe,* for plaintiff.

*Wooley, Blais & Quinn, James M. Shannahan,* for defendants.