EDWARD S. POPKO vs. EUGENE A. JANIK & another.

Hampden. March 11, 1960. — June 23, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Will*, Validity. *Undue Influence.*

In a contested will case involving a will, executed by a widower without known living relatives about three months before his death, giving savings bonds to each of two relatives of his deceased wife, the contestants, and the residue, including his home property, to his housekeeper and nurse, the probate judge's conclusion that the will was procured by undue influence of the housekeeper and nurse could not be said to be plainly wrong on warranted findings that there had existed between one contestant and the testator "a relationship of love and affection as might exist between a parent and foster son," that that contestant had been the principal object of the testator's "bounty" and had been given the residue of the estate, including the home property, in two previous wills executed by the testator, that some months before execution of the contested will the housekeeper and nurse "embarked upon a scheme to acquire as much of . . . [the testator's] holdings for herself as possible" and, by the time of the execution of that will, had acquired substantial interests therein besides prospective interests as a beneficiary under the previous wills, that in those months the testator's physical condition worsened rapidly and he became more dependent on her and subject to dominance by her, a woman of strong will, and that the contested will was executed at a time when he was practically bedridden and "enfeebled by . . . illness to a high degree."

PETITION for probate filed in the Probate Court for the county of Hampden on March 8, 1957.

The case was heard by *Smith*, J.

*Joseph E. Kerigan*, for the proponent and another.

*Charles F. Ely*, for the contestants.

WILLIAMS, J. These are appeals by Edward S. Popko, the proponent for probate of a document purporting to be the will of Frank Sitek, late of Russell, and by Anna Antonyk, the principal beneficiary named therein, from a decree of the Probate Court disallowing the will on the ground that it was procured by her undue influence. The

evidence, except that taken on the first day of the hearing, is reported and the judge has filed a voluntary report of the material facts, which are summarized as follows.

Sitek died on March 1, 1957, and the document in question was executed on December 8, 1956. By its provisions, the contestants Eugene A. Janik and Stanley W. Cioch were each bequeathed United States savings bonds with a maturity value of $1,000, and the appellant Mrs. Antonyk was left the residue of the estate. The proponent, Popko, was named executor. Sitek was sixty-one years of age, a widower, and, so far as he knew, without living relatives. Janik was a relative of Sitek's deceased wife Julia. In 1933 after the death of his parents and when about thirteen years old he had gone to live with the Siteks, and had remained with them, except for four years in military service, until his marriage in 1947. Sitek owned and occupied a house with twenty acres of land in Russell and after his marriage Janik lived near him. "Almost every other day" he helped Sitek in the care of his property. Both he and Sitek worked at the Strathmore Paper Company. The judge found that "there existed between the decedent and . . . Janik a relationship of love and affection as might exist between a parent and foster son," and that Janik was the principal object of Sitek's "bounty and affection." Stanley W. Cioch was a nephew of Sitek's deceased wife. Anna Antonyk was a married woman with two daughters and was living apart from her husband whom she divorced late in 1956. She owned a farm in Blandford and a home in Springfield. Sitek first met her in some transaction involving the sale of a cow in 1952. Thereafter she came to the Sitek house intermittently as a housekeeper staying a day or two at a time and at least until April of 1956 was paid for her services. In February of that year Sitek entered a hospital suffering from a lung cancer and was advised to "straighten out his affairs." His property consisted of the real estate where he lived, a tractor, a truck, approximately $4,000 of United States savings bonds, and deposits of about $7,000 in three banks. On March 6 while

in the hospital he executed a will in which he left his money on deposit to a sister and three brothers in Poland, certain savings bonds described by their respective dates of purchase to ·Cioch and Mrs. Antonyk, and the residue of his estate to Janik.

He remained in the hospital until the end of March and Mrs. Antonyk visited him there nearly every day. When visitors called on Sitek she would monopolize the conversation and answer questions which were addressed to him. Although at the time of his discharge from the hospital Sitek had asked Janik to get his house ready for his return, Mrs. Antonyk brought him to her home in Springfield. There he stayed until the latter part of April. After he returned to his own house Mrs. Antonyk would spend every other week there. Her stays gradually increased in length and from November until Sitek died she was there "constantly," performing services as housekeeper and nurse.

On June 19, 1956, Sitek executed a second will in which, since he did not know whether his relatives in Poland were still alive, he omitted any provisions for them. He increased the legacies to Mrs. Antonyk, leaving her the same bonds bequeathed to her by his former will, all of his bank deposits, cash, the tractor, and six pieces of household furniture to be selected by her. The bequests to Cioch and Janik remained the same as in the previous will. On June 21 he withdrew his balance of $928.28 in the Hampden National Bank and Trust Company and used a part of this money to pay the expenses of a five weeks' vacation for Mrs. Antonyk, her daughter and himself at Revere Beach. On November 29 he added Mrs. Antonyk's name to his account in the Westfield Savings Bank, closed out his account in the Woronoco Savings Bank, and opened a new account in the same amount in the joint names of himself and Mrs. Antonyk. On February 20, 1957, he transferred his truck to Mrs. Antonyk.

The judge found that "commencing in the spring of 1956, Anna Antonyk embarked upon a scheme to acquire as much of Mr. Sitek's holdings for herself as possible." At the

time of the execution of the instrument of December 8 Sitek was "enfeebled by his illness to a high degree." It did not "represent his free and untrammeled desire," but was executed "under the undue influence of Anna Antonyk." Shortly before he died he told Janik that he was afraid of her and that "if he didn't do as she said, 'She would get awful mad and act like a wild beast.' " On the same occasion he also told Janik that "he was to receive the real property on his death."

The meaning of undue influence is fully explained in *Neill* v. *Brackett,* 234 Mass. 367, 369. To warrant a finding of its existence there must be a basis of established facts, and mere suspicion, surmise or conjecture is not enough.

It appears from the evidence that after Sitek left the hospital his physical condition became rapidly worse and during the last three months of his life he was practically bedridden. He became increasingly dependent upon Mrs. Antonyk and by November she was permanently installed in his home as housekeeper and nurse. He required a great deal of care and she faithfully performed her duties as nurse. She was a woman of strong will and as Sitek became weaker and more helpless her dominance of him became more pronounced. She had gradually acquired a substantial present and prospective or testamentary interest in his property, and at the time the document of December 8 was executed that which had not already been given her or left her by will consisted only of the bonds bequeathed to Cioch, a truck, a part of the household furniture and his real estate. So far as the evidence shows Janik continued to be the principal object of his "bounty and affection" and the principal effect of the new will was to deprive his foster son of an inheritance in the home property by substituting Mrs. Antonyk as residuary devisee. In view of the weight to be given the findings of the judge who saw and heard the witnesses including Janik and Mrs. Antonyk, we cannot say that he was plainly wrong in concluding that the questioned will was procured by her undue influence.

*Decree affirmed.*