MARCIA SERON TETRAULT & others[1] *vs.* MAHONEY, HAWKES & GOLDINGS & others.[2]

Essex. December 2, 1996. - July 16, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil,* Summary judgment. *Negligence,* Attorney at law. *Attorney at Law,* Attorney-client relationship, Negligence. *Consumer Protection Act,* Availability of remedy, Trade or commerce. *Fraud. Emotional Distress. Will,* Execution, Undue influence.

This court allowed a party's motion to strike from the appellate record on appeal certain documents that were not considered by the judge below on cross motions for summary judgment and that were, in any event, never properly submitted for consideration. [457-459]

On a negligence claim brought by beneficiaries under a will and under a testamentary trust against the testator's attorneys, summary judgment was correctly entered in favor of the defendant law firm, where, on the materials submitted, there was no genuine issue of material fact regarding the testator's intentions in drafting his will, a deed to real property, and a trust document; thus the plaintiffs had no reasonable expectation of proving that the testator intended to make some other disposition of his property. [460-462]

In a G. L. c. 93A claim brought by beneficiaries under a will and under a testamentary trust against the testator's attorneys, the judge correctly entered summary judgment for the defendants, where the law firm had not engaged in trade or commerce with the plaintiffs. [462-463]

On a claim alleging fraud based on undue influence in the drafting and execution of a deed, where there was no issue of material fact with regard to the grantor's susceptibility to undue influence, the plaintiffs had no reasonable expectation of proving that element of their case, and the judge correctly allowed the defendants' motion for summary judgment. [463-465]

On claims by disappointed beneficiaries under a will and a testamentary·trust, alleging intentional infliction of emotional distress by the testator's spouse and attorneys, the judge correctly allowed the defendants' motion for summary judgment, where no reasonable view of the facts alleged by the plaintiffs would warrant the conclusion that the defendants had engaged in conduct that would satisfy the elements necessary to prevail and where, with respect to the law firm, there was no genuine issue of material fact with respect to the intent of the attorney in question. [465-467]

[1]Simone Tetrault, Rose A. Seron, and Nuart J. Liz.

[2]Harriet A. Seron and Nicholas A. Anagnostis.

CIVIL ACTION commenced in the Superior Court Department on July 26, 1993.

The case was heard by *Elizabeth B. Donovan*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Marc P. Frey* for Rose A. Seron & another.

*Deborah McWade* for Simone Tetrault.

*Timothy W. Demakis* for Marcia Seron Tetrault.

*Harvey Weiner* (*George C. Rockas* with him) for Mahoney, Hawkes & Goldings.

*Thomas J. Barrett* for Nicholas A. Anagnostis & another.

· LYNCH, J. The plaintiffs, all blood relatives of the testator, Berj H. Seron, assert four claims against Mahoney, Hawkes & Goldings (MHG), the law firm that drafted his estate planning documents, which included a will, a deed, and a trust. They allege that MHG was negligent in preparing and attending to the execution of the documents, violated G. L. c. 93A, intentionally inflicted emotional distress on the plaintiffs, and fraudulently conveyed real estate in violation of G. L. c. 109A, §§ 4, 7. In addition, the plaintiffs asserted claims alleging fraud and fraudulent conveyance against Harriet A. Seron, the testator's wife, and Nicholas A. Anagnostis, the testator's stepson. The plaintiffs also asserted a claim against the wife, alleging intentional infliction of emotional distress.

On cross motions for summary judgment, a Superior Court judge allowed the defendants' motions for summary judgment on all counts. Thereafter, the plaintiffs appealed, and we transferred the case here on our own motion.

*Documents properly before us.* When the plaintiffs first moved for what they termed "Judgment on the Pleadings," they submitted extensive medical records and deposition transcripts.[3] The plaintiffs withdrew these documents when they were informed that a new rule required that summary judgment motions under Mass. R. Civ. P. 56, 365 Mass. 824 (1974), be limited to twenty pages. See Superior Court Rule 9A (b) (4). According to the plaintiffs, at the hearing on the cross motions for summary

---

[3]The judge properly determined that what was really before her was a motion for summary judgment pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974), and proceeded accordingly.

judgment, they indicated that the record was incomplete; the judge, however, refused to accept for filing the additional documents and instructed the plaintiffs to reduce the proposed filing of more than 200 pages to a more manageable amount. According to their brief, the plaintiffs had not submitted the additional documents in accordance with the instructions at the time the judge ruled on the motions for summary judgment because she had informed them that summary judgment would not be decided for approximately ninety days but instead issued her memorandum of decision and order less than one month after the hearing. The plaintiffs then submitted all of the documents originally filed along with additional documents in support of a motion to reconsider. That motion was denied, but the judge declined to rule on MHG's motion to strike the additional documentation.[4]

The plaintiffs argue that, in reviewing a grant of the summary judgment decision, the additional documents are properly before this court because the request to file the documents and the instruction by the judge below should be deemed to constitute a motion and order pursuant to Mass. R. Civ. P. 56 (f). Rule 56 (f) provides that parties objecting to the timing of summary judgment file an affidavit explaining that, "for reasons stated [they could not] present by affidavit facts essential to justify [their] opposition" to a summary judgment motion and request a continuance to complete discovery. See *Commonwealth* v. *Fall River Motor Sales, Inc.*, 409 Mass. 302, 307 (1991); *Aronson* v. *Commonwealth*, 401 Mass. 244, 255 (1987), cert. denied, 488 U.S. 818 (1988); *Godbout* v. *Cousens*, 396 Mass. 254, 262 n.11 (1985). Here, the plaintiffs did not rely on rule 56 (f), and despite their argument to the contrary, we fail to see how the request to file additional documents and the instruction by the judge constitute a motion and order under rule 56 (f). Cf. *Aronson* v. *Commonwealth*, *supra* at 254-255 (where affidavit was insufficient, court cannot conclude that judge abused discretion in denying plaintiff opportunity to obtain further discovery). Thus, their failure to file the requisite affidavit is fatal. See *First Nat'l Bank* v. *Slade*, 379 Mass. 243, 244-245 (1979); *Fidelity Mgt. &*

---

[4]The plaintiffs, in pursuing this appeal, then sought to include in the appendix to their brief the documents that had been attached to their motion to reconsider. MHG moved before a single justice of the Appeals Court to exclude these documents from the appendix, and the single justice referred the matter to the panel designated to hear the appeal.

*Research Co.* v. *Ostrander,* 40 Mass. App. Ct. 195, 201 (1996); *Atlas Tack Corp.* v. *DiMasi,* 37 Mass. App. Ct. 66, 67 n.2 (1994). Indeed, contrary to the plaintiffs' assertion, even if the judge considered their request a rule 56 (f) motion for a continuance, her issuance of the summary judgment order prior to receiving any additional documents would suggest that the motion was denied. Moreover, the plaintiffs cannot point to anything in the record to support their claim that they were led to believe that disposition of the motion would take at least ninety days. Finally, we note that, in any event, if the judge did request that the plaintiffs reduce the filing to a more manageable amount of documents, the plaintiffs failed to do so, and merely resubmitted with the motion for reconsideration the 200 pages of documents that were previously rejected by the judge. In these circumstances, we shall not allow the plaintiffs, whose summary judgment motion was denied reconsideration accompanied by additional documentation, to rely on and to cite to the additional documentation while appealing from the grant of summary judgment. Thus, MHG's motion to strike these additional documents filed in the Appeals Court is allowed and we do not consider these additional documents in reviewing the grant of summary judgment. See note 4, *supra.*

*Facts.* In order for their motions for summary judgment to be upheld, the defendants must establish that there are no genuine issues of material fact, Mass. R. Civ. P. 56 (c); *Golub* v. *Milpo, Inc.,* 402 Mass. 397, 400 (1988), and that they are entitled to judgment as a matter of law. *Madsen* v. *Erwin,* 395 Mass. 715, 719 (1985). "[The] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates . . . that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Symmons* v. *O'Keeffe,* 419 Mass. 288, 293 (1995), quoting *Wheatley* v. *American Tel. & Tel. Co.,* 418 Mass. 394, 397 (1994).

Viewed in the plaintiffs' favor, the summary judgment record before the judge reveals the following facts. The testator's estate plan consisted of a deed, a will, and an inter vivos trust. These documents were drawn up by MHG, who was hired by the stepson to prepare an estate plan for his stepfather, Berj H. Seron (testator). At the stepson's request an attorney at MHG prepared a deed that was signed and delivered transferring the testator's

residence to the testator and his wife, as tenants by the entirety. MHG also drafted a will which provided that the wife was to receive all of the testator's personal property with the exception of cash, stocks, and bonds. The cash, stocks, and bonds were bequeathed by the residuary clause to the wife (50%) and Simone Tetrault, the testator's granddaughter (50%). The testator then reviewed the documents, and decided to leave certain "investment" artwork to his granddaughter. The attorney then advised the stepson that an inter vivos trust would accomplish the testator's intention; he drafted a trust agreement for the Berj H. Seron Revocable Trust (trust). The will made the trust a beneficiary of 50% of the testator's residuary estate and the 50% bequest to his granddaughter was eliminated. The stepson also told the testator to prepare a list of art pieces he wished to give to the trust.

The testator again reviewed the deed, will, and trust; he revised the trust to designate his daughter Marcia Seron Tetrault and granddaughter each as 50% income beneficiaries of the trust. After these revisions were made by the attorney, the testator signed the deed, will, and trust in the presence of two witnesses and a notary public. At this time, he changed the will by writing in that Rose A. Seron and Nuart J. Liz, his two sisters, were each to receive a 5% interest in the residue of his estate; the trust's portion of the residuary estate was reduced to 40%. The wife's portion of the residuary estate remained at 50%. The testator executed the will but, because he forgot to sign a page, he reexecuted the will the next day at the attorney's direction.

Because the testator died on September 2, 1990, without preparing the list of investment artwork to go into the trust, it was largely unfunded at the time of his death. On November 28, 1990, the Essex Division of the Probate and Family Court Department allowed the testator's will with the interlineations that gave each of the testator's sisters a 5% interest in the residuary portion of the estate. The testator's daughter assented to the probate of the will.

*The negligence claim.* The plaintiffs contend that MHG owed a duty of care to them arising from the fact that they were intended beneficiaries of the testator, and thus the duty to the testator also extended to them. The plaintiffs allege that MHG had a duty to ascertain the extent of the testator's assets and the form in which they were held, to advise the testator that the practical

effect of his estate plan was that his child, grandchild, and sisters would receive nothing, and to ascertain whether that was, in fact, the testator's intent.[5] We need not decide whether such a duty exists because a review of the documents submitted by MHG in support of its summary judgment motion shows there is no genuine issue of material fact regarding the testator's intent.

MHG submitted affidavits from both the wife and the stepson in which they averred that the stepson was acting in accordance with the testator's intentions when he had MHG draft the deed and will and that the testator intended his wife to receive the marital residence. In response the plaintiffs have produced nothing to contest these affidavits with respect to the testator's intent. The will, the deed, and the trust document do not support their claims. Contrast *Simpson* v. *Calivas*, 139 N.H. 1, 4-7 (1994) (in concluding that court in negligence action would look beyond four corners of will to ascertain testator's intent, it was clear that notes of meeting between testator and defendant lawyer supported plaintiff's claim that testator intended to leave all his land to plaintiff). Indeed, the materials submitted by the plaintiffs support the conclusion that the residence was previously in the testator's name only and another home was in the wife's name only. It is also undisputed that shortly before his death, the testator's wife of twenty-seven years asked the testator to transfer their joint residence to them both, as tenants by the entirety. There is no suggestion, however, in any of the summary judgment submissions that the testator told any of the plaintiffs that his residence would be left to the testator's daughter, granddaughter, or sisters, nor is there any indication regarding how the plaintiffs would make a showing that the testator intended to make some disposition of his property contrary to that expressed in the instruments. Thus on the one hand we have a properly executed deed granting a survivorship interest in the marital home to a long-term spouse, coupled with uncontested affidavits that this disposition was in accord with the testator's intent and that the spouse had contributed approximately 37% of the original purchase price. On the other hand we have the mere assertion by the party with the burden of proof that the testator would have made some other

---

[5]We note that two of the plaintiffs, Marcia Seron Tetrault and Simone Tetrault, were not direct beneficiaries of the will. Rather, they were the beneficiaries of the trust which under the terms of the testator's will was to receive 40% of his residuary estate.

disposition of the property (we know not what) if he had been told by his lawyers that the house was his principal asset.[6] In these circumstances the defendants have sufficiently demonstrated by materials unmet by countervailing materials that the plaintiffs have no reasonable expectation of proving their case. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

Our conclusion does not mean that we approve of the professional conduct of the lawyers in this case. To fail to meet with a client for whom one is drafting a will is certainly poor professional practice for "[a]n attorney owes to a client, or a potential client, for whom the drafting of a will is contemplated, a duty to be reasonably alert to indications that the client is incompetent or is subject to undue influence and, where indicated, to make reasonable inquiry and a reasonable determination in that regard." *Logotheti* v. *Gordon*, 414 Mass. 308, 311 (1993). See S.J.C. Rule 3:07, Canon 5, as appearing in 382 Mass. 779 (1981) ("[a] lawyer should exercise independent professional judgment in behalf of a client"), and S.J.C. Rule 3:07, Canon 6, DR 6-101 (A) (2), as appearing in 382 Mass. 783 (1981) (lawyer shall "not handle a legal matter without preparation adequate in the circumstances").

*The G. L. c. 93A claims.* The plaintiffs also argue that the judge erred in allowing MHG's motion for summary judgment on their G. L. c. 93A claims. The plaintiffs contend that, because no attorney from MHG ever met with the testator or determined the extent of the testator's assets and the attorneys relied exclusively on the stepson's representations concerning the testator's desires, the preparation of an estate plan, which taken as a whole purported to but did not actually represent the testator's testamentary intent, amounts to misrepresenting a material fact and constitutes a violation of G. L. c. 93A. In addition, the plaintiffs argue that G. L. c. 93A also was violated because MHG deceived them by purporting to represent the interests of the testator when in fact it was representing the interests of the wife and the stepson. We conclude, however, that the judge was correct in allowing MHG's summary judgment motion on the c. 93A claim.

We have indicated that the proper party to assert a c. 93A claim against an attorney is a client or someone acting on a client's behalf. *Schaeffer* v. *Cohen, Rosenthal, Price, Mirkin, Jennings &*

---

[6]The executor's first amended account shows probate assets of $149,881.

*Berg, P.C.,* 405 Mass. 506, 514 (1989). See *Robertson* v. *Gaston Snow & Ely Bartlett,* 404 Mass. 515, 527, cert denied, 493 U.S. 894 (1989). Furthermore, for an attorney to be liable under G. L. c. 93A outside the attorney-client relationship, he or she must have been acting in a business context. *First Enters., Ltd.* v. *Cooper, ante* 344, 347 (1997). We conclude that the attorney was not engaged in trade or commerce with the plaintiffs and, therefore, there can be no recovery under c. 93A. See *Logotheti* v. *Gordon, supra* at 312.

*Fraud.* The plaintiffs also allege fraud against the wife and the stepson. There were no separate counts alleging undue influence or breach of confidential relationships against the wife or the stepson. Within the count alleging fraud against the wife, however, were various allegations that she was in a confidential relationship with the testator and unduly influenced him to deed his home as joint tenants. Similarly, within the count alleging fraud against the stepson, the plaintiffs alleged that the stepson, who was a trustee, was in a confidential or fiduciary relationship with the testator yet induced the testator to sign the estate planning documents through "fraudulent actions" solely to further the interests of the wife. The plaintiffs further argue that the stepson was in breach of a duty to disclose to the testator that the effect of his estate plan, in particular the conveyance of the real estate, would be to disinherit his blood relatives. In addition the plaintiffs allege that the stepson has failed to carry out his duties as trustee. Moreover, the plaintiffs argue that the complaint can be fairly read to include an allegation that the stepson unduly influenced the testator. Thus, we treat the complaint as alleging fraud based on undue influence, and the judge apparently did the same.[7] See Mass. R. Civ. P. 8 (f), 365 Mass. 749 (1974) ("[a]ll pleadings shall be so construed as to do substantial justice"). We consider these allegations solely with respect to the deed signed

---

[7]We note that, where a claim that an individual's free agency has been destroyed, the issue can be expressed in terms of fraud or undue influence; where, as here, the complaint establishes with sufficient particularity that the plaintiffs' "expected evidence relates only to influence exerted through coercion rather than through deception — 'fraud' in the stricter sense." *Mirick* v. *Phelps,* 297 Mass. 250, 252 (1937). See Mass. R. Civ. P. 9 (b), 365 Mass. 751 (1974). Fraud, in the sense of deceit, however, is a separate cause of action, *Wellman* v. *Carter,* 286 Mass. 237, 252-253 (1934); and where no averments have been pleaded with any particularity, we need not consider the allegations in the plaintiffs' brief that, given the stepson's role in the testator's estate planning and the ultimate disposition of the estate, a jury could conclude that he misled the testator as to how his estate would pass and the testator therefore signed the

by the testator, for the will has been probated.[8] As such the will is "establishe[d] . . . against the world." *Finer* v. *Steuer*, 255 Mass. 611, 616 (1926), quoting *Bonnemort* v. *Gill*, 167 Mass. 338, 340 (1897).

In order adequately to establish a claim for fraud based on undue influence, a plaintiff must establish that the defendant overcame the will of the grantor. See *Corrigan* v. *O'Brien*, 353 Mass. 341, 350 (1967); *O'Brien* v. *Collins*, 315 Mass. 429, 437 (1944); *Neill* v. *Brackett*, 234 Mass. 367, 369 (1920). Undue influence involves some form of compulsion which coerces a person into doing something the person does not want to do. Four considerations are usually present in such a case. These involve showings "that an (1) unnatural disposition has been made (2) by a person susceptible to undue influence to the advantage of someone (3) with an opportunity to exercise undue influence and (4) who in fact has used that opportunity to procure the contested disposition through improper means." *Heinrich* v. *Silvernail*, 23 Mass. App. Ct. 218, 223 (1986), citing *Neill* v. *Brackett, supra*.

In the instant case, the plaintiffs rely on a portion of a deposition of Dr. Mortimer Greenberg, who treated the testator while he was hospitalized and witnessed his signing of the will and other documents. The deposition, however, does not support the plaintiffs' claim that the testator was subject to undue influence. Although the portion of the deposition relied on by the plaintiffs[9] might be regarded as ambiguous regarding the testator's mental state at the time he signed the documents, in other portions of his deposition before the judge Dr. Greenberg stated

---

documents of his own free will but "affected by a false representation of fact." *Wellman* v. *Carter, supra* at 253. See Mass. R. Civ. P. 9 (b) (fraud must be pleaded with particularity).

[8] We note also that the plaintiffs do not appear to challenge the validity of the trust documents.

[9] In the portion of the depostion submitted by the plaintiffs in support of their motion for summary judgment, Dr. Greenberg stated that "when [the testator] had an infection and fever on admission" he was "disoriented." According to Dr. Greenberg, this disorientation was a result of the untreated infection. Dr. Greenberg also stated that the testator's mental status "waxed and waned" during the testator's hospitalization but that the testator's mental status related to times when he had a high fever. The testator was, however, "as oriented as most hospital patients are after he received treatment for the infection." According to Dr. Greenberg, when lucid, the testator "seemed to be appropriate" for "purposes of explaining things to him for discussing his hospitalization and his illness."

that at the time around August 8, the testator was not suffering from senile dementia and in response to a question regarding whether the testator "was capable of having conversations with you about his illness and his longevity and what kind of measures he wanted you to take," answered, "Yes." Thus, the wife and the stepson, by reference to material authorized by Mass. R. Civ. P. 56 (c), unmet by countervailing materials, established that the nonmoving party, who will bear the burden of proof at trial, had no reasonable expectation of proving an essential element of their case. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). Moreover, while it is true that where a confidential relationship exists it generally takes less to establish undue influence on the part of beneficiaries, or in this case, grantees, *Heinrich* v. *Silvernail, supra* at 225, citing *Doggett* v. *Morse,* 299 Mass. 383, 389 (1938), where there is no genuine issue of material fact regarding the testator's being subject to undue influence, the judge was correct in allowing the summary judgment motion of the wife and stepson.[10, 11]

*Intentional infliction of emotional distress.* The plaintiffs asserted claims against the wife and MHG, alleging that "the [p]laintiffs experienced severe, deep, and lasting emotional distress in confronting the realization that they were the intended

---

[10]We note also that the deposition of Vincent Costa, the second witness to the signing of the documents, that he had a "feeling" that the testator did not know he was signing a will and deed at the time but that he "could be wrong" does not advance the plaintiffs' allegation such that a genuine issue of material fact is created. See *Heinrich* v. *Silvernail,* 23 Mass. App. Ct. 218, 229 (1986), quoting *Neill* v. *Brackett,* 234 Mass. 367, 370 (1920) ("Suspicion . . . no matter how strong, will not warrant a finding of undue influence. . . . 'There must be a solid foundation of established facts upon which to rest an inference of its existence' "). See *Popko* v. *Janik,* 341 Mass. 212, 215 (1960); *O'Brien* v. *Collins,* 315 Mass. 429, 437 (1944).

[11]We note also that there was no allegation that would support an inference that the testator's disposition of his assets was unnatural. Indeed, including the wife's name on the deed did not constitute a disposition that ignores the natural objects of the decedent's bounty where the wife and the testator had been married for twenty-seven years. See *Heinrich* v. *Silvernail, supra* at 224 (mere fact that decedent chose to leave property to friend rather than relative does not render disposition unnatural). Contrast *Popko* v. *Janik, supra* (finding of undue influence where testator's will left little to his nephew, who was during testator's lifetime like "foster son" to him and principal object of his "bounty and affection" and instead gave home to housekeeper). Contrary to the plaintiffs' assertions, the disposition is not made unnatural merely by showing that the wife and the testator kept separate finances.

beneficiaries of [the testator]" but that his wishes were not carried out because of the intentional actions of both MHG and the wife.

To prevail on their claim for intentional infliction of emotional distress, the plaintiffs must establish "(1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, . . . (2) that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiff's distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it." *Payton* v. *Abbott Labs*, 386 Mass. 540, 555 (1982), citing *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 145 (1976). Liability cannot be predicated on " 'mere insults, indignities, threats, annoyances, petty oppressions or other trivialities' " nor even is it enough " 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.' " *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 99 (1987), quoting Restatement (Second) of Torts § 46 comment d (1965).

Even putting as harsh a face on the actions of MHG and the wife as the facts alleged would reasonably allow, no reasonable jury could conclude that they engaged in conduct that would satisfy the elements necessary to prevail on a claim of intentional infliction of emotional distress. Indeed, contrary to the plaintiffs' position, evidence that the wife, who had a strained relationship with her husband's family, asked her husband of twenty-seven years to put his home in both of their names shortly before he died does not constitute extreme or outrageous conduct. See *Beecy* v. *Pucciarelli*, 387 Mass. 589, 596 (1982) (claim alleging intentional infliction of emotional distress properly dismissed where defendant's conduct could not be characterized as extreme and outrageous); *Richey* v. *American Automobile Ass'n*, 380 Mass. 835, 839 (1980) (even if trier of fact inferred that plaintiff's supervisor made a bad, unjust, and unkind decision to fire employee who was "tightly strung," plaintiff still failed to make out a plausible case of "outrage"). Compare the facts of this case with those of *Simon* v. *Solomon*, 385 Mass. 91, 95, 97 (1982)

(persistent failure by landlord to relieve flooding problem which resulted in water and sewage entering tenant's apartment); *Boyle* v. *Wenk*, 378 Mass. 592 (1979) (persistent misconduct by private investigator); *Agis* v. *Howard Johnson Co.*, *supra* at 144-145 (public humiliation).

With respect to the plaintiffs' claim against MHG alleging intentional infliction of emotional distress, the affidavit of the attorney from MHG who prepared the documents for the testator makes clear that he at all times believed he was acting consistently with the testator's intent and the plaintiffs have produced nothing to the contrary. Thus, while summary judgment on a matter dealing with intent requires great circumspection, there must be some indication that a plaintiff, who will bear the burden at trial, can produce the requisite quantum of evidence to enable it to reach a jury with its claim. *A. John Cohen Ins. Agency, Inc.* v. *Middlesex Ins. Co.*, 8 Mass. App. Ct. 178, 183 (1979). Where as here the plaintiffs have not responded to the defendants' evidence with any countervailing evidence that would indicate there is a genuine issue of material fact with respect to the intent of the attorney from MHG, summary judgment was appropriate. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). The judge was correct in allowing the motion for summary judgment of MHG and the wife.[12]

Summary judgment in favor of the defendants is affirmed.

*So ordered.*

---

[12]In their notice of appeal, the plaintiffs stated that they also wished to appeal from the decision granting summary judgment to MHG, the stepson, and the wife on the count alleging fraudulent conveyance of real estate in violation of G. L. c. 109A, §§ 4, 7. The plaintiffs, however, have not briefed this issue, nor have they briefed their appeal from the denial of the motion to reconsider other than to argue that all the documents brought with the motion to reconsider are properly before this court. Therefore, these arguments are deemed waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).