Rudolph CARANCI

v.

Marion M. HOWARD, as Executrix of
the Last Will and Testament of
Elizabeth M. Philips.

No. 96–258-Appeal.

Supreme Court of Rhode Island.

March 24, 1998.

Lauren E. Jones, John L. Quigley, Jr., Anthony Gallone, Providence, Mark A. Sjoberg, Warwick, for Plaintiff.

Russell Bramley, Warwick, Francis X. McMahon, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on appeal from a judgment entered in Superior Court granting the motion of the proponent, Rudolph Caranci (proponent or Caranci), for judgment as a matter of law, admitting the 1990 last will and testament of Elizabeth M. "Bessie" Phillips (decedent or Phillips) to probate over the claim of the contestant Marion M. Howard that said will had been procured through undue influence on the part of the proponent. The facts insofar as pertinent to the instant appeal are as follows.

The decedent was born in 1899 and lived, nearly her entire life on her family's farm in Glocester, Rhode Island. It is this farmland that became the fulcrum of the dispute between the parties to the instant action. After her father died in 1946, Phillips assumed the role of primary caretaker of the estate while living there with her mother and sister. Phillips never married, and when she died on June 26, 1991, she was survived by only her most distant relatives with whom she had had little contact during the course of her life. The evidence adduced at trial revealed that those closest to decedent throughout her long and healthy life were the small group of neighbors whose families lived near the Phillips homestead.

One such neighbor was contestant Marion M. Howard (contestant or Howard), whose parents owned the property directly across the street from the Phillips farm. Howard became friendly with Phillips when she was still a little girl and would tag along with Phillips as she went about her chores on the Phillips farm. The testimony of Howard and other witnesses confirmed the fact that contestant and decedent shared a very close relationship. As Howard explained, "I was like tied to her apron strings." Howard, many years Phillips's junior, maintained the relationship throughout Phillips's life, including the period of contestant's leaving home for college and cultivating a career away from her family's farm. In 1988 Phillips executed a will under which Howard was to have been the principal beneficiary.

Before Caranci entered decedent's life in earnest during the period of 1989–1990, Howard testified that she would regularly visit Phillips on weekends, sometimes taking meals or other neighborly gifts to Phillips. Phillips entrusted Howard with assisting her in the handling of some of her personal affairs. One such task involved the sale of a substantial portion of Phillips's property, specifically, sixty-eight acres located adjacent to the Howard property and just across the road from the farmhouse occupied by decedent. After Phillips's sister, Avis, passed away in 1988, Phillips approached contestant requesting her assistance in securing a buyer for the aforementioned acreage. Howard testified that on "many, many" occasions while Avis was still alive the two sisters had expressed their wish that the land remain undeveloped. As contestant testified, "They would like to see it stay the same as it always had been." Howard investigated the possibility of the land sale and eventually put Phillips in touch with a state senator, who in turn introduced Phillips to Robert Hutchins (Hutchins) of the Glocester Land Trust (Land Trust). Howard arranged a meeting among Phillips, the senator, and Hutchins at Phillips's home. After discussing the proposition of the sale of her land to the Land Trust, Phillips concluded that the idea of such a trust suited her and her late sister's wishes perfectly. Following the necessary legal prerequisites, the sale of the sixty-eight acres was set for a 1990 closing.

Caranci first met decedent in the fall of 1986. At that time Caranci was employed as the tax assessor for the town of North Providence.[1] According to proponent, he and

1. Caranci retired from this position in December 1987.

Phillips became friends after striking up a conversation one day when he stopped along the road by her property. They remained friends until the time of her death approximately five years later at the age of ninety-two.

In 1989 Caranci read an article in the Providence Journal concerning Phillips's impending sale to the Land Trust. Thereafter, proponent broached the issue of the Land Trust land sale with Phillips and increased the frequency with which he paid visits to her home. Caranci testified that he informed Phillips that if the Land Trust sale did not come to fruition, he could help her sell the parcel to some of his acquaintances who might be interested in developing the land.

By the summer of 1990 Phillips was growing anxious about the land sale. Caranci testified that Phillips, "knowing [of his] background in real estate," sought his advice on how to expedite the process. According to Caranci, Phillips told him that "her time was running out and she had things she wanted to do." Caranci advised Phillips to have her lawyer give the Land Trust an ultimatum that if the sale was not completed by a certain deadline, she would "take the land away from them."

Howard testified that Phillips's demeanor toward her changed dramatically during this period. Phillips confronted contestant, wanting to know why the sale was not closing and threatening that if the sale was not completed by the end of August, she would sell the property to Caranci. In addition Phillips directed Howard to close the bank account the two of them had held jointly for several years.

Howard, who stood to gain nothing by the sale, was understandably distressed over Phillips's sudden change. Notwithstanding her distress, Howard pursued the matter on Phillips's behalf. Upon learning that the closing of the land sale would take place prior to the end of August 1990, she so informed Phillips. After the sale was completed, on August 29, 1990, decedent's longtime attorney delivered the proceeds of the sale in the form of a check to Phillips at her home. Caranci deposited the check into a joint bank account in his and decedent's name.

Several days thereafter, Phillips's attorney received from Caranci a call discharging him. In turn the attorney contacted Phillips to inquire if Caranci's notification of discharge was a true representation of her wishes. Phillips confirmed that she would no longer require his services, explaining that Caranci had advised her to terminate their relationship because the attorney was a divorced man and thus could not be trusted.

Immediately following the dismissal of decedent's attorney, Caranci called on his longtime acquaintance, also an attorney (Caranci's attorney), advising him that Phillips desired his services to draft a new will under which Caranci would be the sole beneficiary. The attorney testified that Caranci's request gave him pause for several reasons: first, he had never even met decedent whereas he had been a business colleague of Caranci's for many years and had previously received "quite a few" client referrals from Caranci; second, and perhaps more importantly, Phillips was leaving essentially her entire estate to Caranci, with whom she had merely been acquainted for a relatively short period. Nevertheless, on September 12, 1990, the attorney traveled to Phillips's home to meet with her to discuss the terms of the will. Upon arriving at Phillips's home, he was greeted by Caranci. After ushering the attorney into the house, Caranci left decedent and his lawyer alone. The attorney testified that he did not disclose to Phillips, in any detail, his long-term relationship with Caranci.

Caranci's attorney drafted the will leaving Phillips's property subject to testamentary disposition to Caranci; the bulk of the remainder of her property would pass to him by virtue of the joint-survivorship bank account. On September 19, 1990, he delivered the will to Phillips, and she executed it. Caranci's attorney served as one of the two necessary witnesses to the execution of the will; the other witness was Caranci's nephew, John W. Lynch.

Bessie Phillips passed away in June 1991. The proponent presented the 1990 will to the

Glocester Probate Court for admission to probate. Howard contested the will, claiming that it had been procured through undue influence practiced upon decedent by Caranci. Following a hearing thereon, the court refused to accept the 1990 will, finding that its execution was the result of undue influence on the part of proponent. Howard then petitioned the Probate Court to admit the 1988 will to probate. The Probate Court granted the petition and named Howard executrix. Caranci appealed these decisions to the Superior Court. A jury trial was held in Superior Court in 1996. After both sides presented evidence, Caranci moved for judgment as a matter of law.[2] The trial justice removed the case from consideration by the jury, concluding, as she must have under the applicable standard for such a motion, that there was insufficient evidence of undue influence to warrant a reasonable jury's finding in favor of contestant.

The contestant raises two issues before us that she contends warrant reversal of the Superior Court judgment entered against her. First, Howard contends that the trial justice erred in excluding evidence she sought to place before the jury. Second, contestant claims that the trial justice committed error under the facts of this case, in granting proponent's motion for judgment as a matter of law. We shall address each issue separately. Such additional facts as may be necessary to our discussion of the issues will be supplied.

## Applicable Law

 Undue influence may be simply defined as the substitution of the will of a third party for the free will and choice of the testator in making a testamentary disposition.[3] *See, e.g., Marcinko v. D'Antuono,* 104 R.I. 172, 181, 243 A.2d 104, 109 (1968) (citing *Caldarone v. Caldarone,* 48 R.I. 163, 165, 136

**2.** Judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure was formerly referred to as "a motion for a directed verdict."

**3.** Caranci relies heavily on the fact that decedent was a strong-willed woman of sound mind. Weakness of mind, however, is not an essential element to a finding of undue influence, even though it may be relevant. Rather the testator's

A. 489, 490 (1927)). The party contesting the will must prove undue influence by a preponderance of the evidence. *Murphy v. O'Neill,* 454 A.2d 248, 250 (R.I.1983). Because the perpetrator of such covert coercion generally applies the forbidden pressure in secret, one seeking to set aside such a will is often unable to produce direct evidence of the undue influence to the factfinder but rather must rely on circumstantial evidence. *See Apollonio v. Kenyon,* 101 R.I. 578, 593–94, 225 A.2d 778, 787 (1967).

 Generally speaking, the unexplained, unnatural disposition of a decedent's property by will, when considered along with other factors, can give rise to an inference of undue influence. *Murphy,* 454 A.2d at 249. We have previously held that evidence that the person accused of unduly influencing the testator enjoys a relationship of trust and confidence with the testator and was instrumental in the testator's execution of the contested will may at least give rise to the drawing of a permissible inference that undue influence was exerted upon the testator. *Apollonio,* 101 R.I. at 596, 225 A.2d at 788. Nevertheless, the party seeking to avoid a will that he or she believes is due to undue influence must show more than mere evidence of an opportunity to exert such influence unaccompanied by evidence that the impermissible pressure was actually asserted. *Campbell v. Rhode Island Hospital Trust Co.,* 125 A. 220, 221 (R.I.1924). The evidence of influence whether direct or circumstantial must be connected with and relevant to the time that the challenged will was executed. *Brousseau v. Messier,* 79 R.I. 106, 110, 84 A.2d 608, 610 (1951).

## Exclusion of Evidence

The contestant's first challenge on appeal attacks the trial justice's rulings excluding various evidentiary proffers by contestant.[4]

state of mind as it relates to testamentary capacity must be proven by the proponent of the will. *See, e.g., Talbot v. Bridges,* 54 R.I. 337, 340, 173 A. 72, 74 (1934).

**4.** The trial justice allowed Howard to make offers of proof in regard to each of the excluded evidentiary items outside the presence of the jury.

First, contestant sought unsuccessfully to introduce further testimony of the attorney who had prepared, at proponent's request, the 1990 will of decedent. According to defense counsel, the attorney was prepared to testify regarding a telephone call he received just days after completing decedent's will. The proponent called the attorney and asked him to draft a deed conveying Phillips's remaining real property (primarily that property upon which her home was situated) to proponent and decedent as joint tenants, an action against which the attorney had advised Phillips. Nevertheless the deed was prepared by the attorney and delivered to Caranci on October 5, 1990, only sixteen days after the execution of her will. Also the attorney was not permitted to testify that in May 1991, eight months after the execution of the will and six weeks before the death of decedent, he, at proponent's request, drafted both a general power of attorney and a durable power of attorney relating to treatment to be provided in the event of Phillips's incapacitation, which were executed by decedent on May 8 and 9, 1991, respectively.

Contestant was also not allowed to place into evidence bank records dated May 16, 1991, relating to the joint bank account Caranci established in his and Phillips's name sometime in late August or earlier September, 1990, into which the sole deposit was the proceeds from the sale of her land to the Land Trust. Howard's offer of proof indicated that (1) although the account was allegedly a joint account with rights of survivorship from which Caranci primarily paid Phillips's expenses, several of the checks signed by Caranci between September 1990 and June 1991 were for large sums of money made payable to cash, and (2) either at the time of the creation of the account or sometime thereafter, proponent's wife, Anna Caranci, was named as an additional party to the account.

Howard sought the introduction of decedent's 1990 tax returns to show that the preparer of the returns was also at that time Caranci's relative's accountant. According to Howard's counsel this constituted further evidence that "Caranci had surrounded this woman with his own people."

Last, contestant sought to introduce the testimony of Eleanor Hoar (Eleanor), Phillips's long-time friend and neighbor. Eleanor was expected to testify regarding several visits Caranci made to her home. Eleanor was not allowed to testify that during a conversation between her and Phillips, Eleanor complained that the visits by Caranci were disturbing to her, to which decedent responded by saying, "I've made a big mistake."

The trial justice's expressed reason for excluding this evidence was her opinion that the testimony contestant sought to introduce was irrelevant as a matter of law since the events in question had taken place subsequent to the execution of Phillips's will on September 19, 1990. The contestant argues that such a rigid policy of exclusion by the trial justice amounted to error. We agree.

It is well settled that we shall not disturb a trial justice's admission or exclusion of evidence on relevancy grounds absent a showing by the aggrieved party that the trial justice abused his or her discretion. *See, e.g., Flanzbaum v. Senco Products, Inc.,* 460 A.2d 15, 16–17 (R.I.1983). The party challenging such a ruling bears the supplementary burden of establishing that the excluded evidence was material and that the exclusion thereof had an impermissibly prejudicial influence on the decision of the factfinder. *Id.* at 17.

We must distinguish, however, this general rule of review from that impelled by the array of facts in the instant case. We do not believe that the trial justice excluded contestant's proffered testimony upon a belief that such evidence was irrelevant to show the relationship between proponent and decedent or that the excluded evidence lacked sufficient probative value in respect to the alleged impermissible influence contestant was claiming. We believe that the rationale for the trial justice's ruling was her incorrect interpretation of our earlier decisions to set forth a bright-line rule prohibiting the introduction of any evidence of circumstances or events that took place following the execution of the will in question. She held as a matter of law that such evidence could not possibly have any bearing on whether undue influence was

at work on the testatrix *at the time the will was made.* *See, e.g., Brousseau,* 79 R.I. at 110, 84 A.2d at 610.

We do not interpret our prior decisions to mandate such a hard and fast rule. The better reasoned analysis requires an ad hoc, totality-of-the-circumstances approach to the facts of each particular case. We agree in part with the reasoning of the trial justice that evidence of events occurring subsequent to the execution of the challenged instrument may tend to be less probative on the question of whether undue influence was in operation upon the testator at the execution of the challenged will. The jury would be justified in assigning less weight to such evidence, and the proponent of the will, of course, would be permitted to argue accordingly to the jury. As was the case in *Brousseau,* there may come a point at which evidence of subsequent events is so far removed in time from the execution of the contested will that such evidence could be deemed irrelevant as a matter of law. However, that line was not crossed in the instant case, and the trial justice should not have kept the excluded evidence from the jurors' consideration. Moreover, the trial justice should have considered that evidence in making her decision on proponent's Rule 50 motion because we are of the opinion that due consideration of the excluded evidence compels a different result.

Although occurring after the execution of Phillips's 1990 will, the events that contestant sought to place before the jury are distinguishable from the type of evidence we determined to be irrelevant and thus properly excluded in *Brousseau.*

In *Brousseau* the party contesting the will was permitted to present to the jury allegations contained in a pending equitable complaint that sought to set aside a deed conveyed by the testatrix of the contested will to a third party. 79 R.I. at 110, 84 A.2d at 610.

The contested will had been executed in 1945 whereas the events to which the contestant referred concerned the conveyance of a deed in 1949, a transaction that the complainant in the equitable suit alleged had been the fruit of undue influence. *Id.* at 109–11, 84 A.2d at 609–10. Counsel for the contestant was permitted to read excerpts from the complaint including the bare allegation, based on information and belief, that the deed was procured through undue influence. *Id.* at 110, 84 A.2d at 610. The trial justice allowed the introduction of excerpts from the equitable complaint because he was of the opinion that the fact that the validity of the deed had been questioned on the basis of undue influence might be material to the question of whether the contested will may have been similarly tainted. *Id.* at 109–10, 84 A.2d at 609–10. This court held that evidence of undue influence must demonstrate that said influence was at work at the time the will was executed. *Id.* at 110–11, 84 A.2d at 610. This court further explained that the references to the equitable complaint should have been excluded not only because they were based entirely upon information and belief (allegations by a litigant in a pending case) but also because the evidence concerning the 1949 deed lacked sufficient probative value to outweigh the decidedly prejudicial effect this evidence had on the jury's decision to set aside the will. *Id.*

The court's reasoning was not then, and is not now, the product of complex legal analysis but simply plain common sense. Contrary to proponent's position and the apparent belief of the trial justice, nowhere in our earlier decisions have we declared a rigid time bar such as was applied in the instant case.[5] Even if we agree with the trial justice that the proponent of evidence relating to events subsequent to the execution of the contested will should bear a "heav[ier] burden" with respect to those proffers than

---

5. Let us hypothesize, by way of example, that the groundskeeper of a large Newport estate was named the sole beneficiary under the will of the lady of the house, a widow, to the exclusion of her then-living children. Further, assume that the day following the execution of said will the groundskeeper banished the lady of the estate to the servant's quarters, took up residence himself in the master suite, and placed his name atop the wrought-iron entrance archway. It could not seriously be argued that such circumstantial evidence is inadmissible as irrelevant to the issue of whether the testatrix's will had been overborne by the undue influence of the groundskeeper. Here, although the facts may not possess the same exaggerated effect, the trial justice's rigid adherence to such a time bar produced a similarly unjustified result.

would be the case for pre-execution evidence, we do not believe the obstacle should be insurmountable. In any event there is no impermeable rule that evidence must only relate to events prior to the execution of the will. Prior evidence may indeed be more probative and persuasive on the issue of undue influence, but circumstantial evidence may relate to matters occurring within a reasonable time after the execution of the will as well as before.

The evidence contestant wished to have the jury consider described events that took place shortly after the execution of the 1990 will. With respect to the offers of proof regarding (1) the deed to Phillips's remaining property executed against the advice of Caranci's attorney, (2) evidence of the access to, and use of, the joint account containing the Land Trust proceeds, (3) evidence regarding the powers of attorney executed by decedent in May 1991, and (4) Eleanor's recounting of Phillips's statement, "I've made a big mistake," we are of the opinion that such evidence offered an arguably probative insight into the stimuli surrounding the related decisions and conveyances made by Phillips within a relatively brief period concerning the disposition of her entire estate and constituted probative circumstantial evidence. Consequently the trial justice's exclusion of the proffered evidence was erroneous.

### Judgment as a Matter of Law

■ The contestant also claims that the trial justice committed reversible error by granting proponent's motion for judgment as a matter of law at the close of the evidence. The legal standard applicable to such a motion is a familiar one. A trial justice, in considering a motion for judgment as a matter of law, must view the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences therefrom in that party's favor without weighing the evidence or assessing the credibility of the witnesses. *Pantalone v. Advanced Energy Delivery Systems, Inc.*, 694 A.2d 1213, 1216 (R.I.1997); *Marcinko*, 104 R.I. at 180–81, 243 A.2d at 109. We employ an identical standard when reviewing a trial justice's grant or denial of such a motion. *Cinq–Mars v. Rodriguez*, 674 A.2d 401, 405 (R.I.1996). If, after

applying this standard to the evidence, the trial justice concludes that no reasonable jury could find for the party opposing the motion, he or she should grant the motion. *Izen v. Winoker*, 589 A.2d 824, 827 (R.I.1991). However, if reasonable minds could disagree about the state of the evidence when viewed in this light, the nonmoving party is entitled to have the jury determine the issue and the trial justice must deny the motion. *AAA Pool Service & Supply, Inc. v. Aetna Casualty and Surety Co.*, 479 A.2d 112, 115 (R.I. 1984). In our opinion, applying these principles to the case at bar compels reversal.

■ We begin by agreeing with the sentiment expressed by the Supreme Judicial Court of Massachusetts that "mere suspicion, surmise or conjecture" alone is insufficient to support a finding of undue influence. *Popko v. Janik*, 341 Mass. 212, 167 N.E.2d 853, 855 (1960). We accept this sound legal principle. However in the case at bar we are of the opinion that the totality of the evidence considered cumulatively, including that evidence erroneously excluded, was sufficient to warrant a jury determination. We emphasize the fact that we are reviewing the trial justice's decision to remove this case from consideration by the jury and not deciding the merits of contestant's undue-influence claim. We cannot say as a matter of law that no reasonable jury viewing all the evidence in the light most beneficial to contestant could render a verdict on her behalf.

If all that contestant had managed to place before the jury amounted to evidence that decedent had revoked her 1988 will leaving contestant, decedent's lifelong friend and confidant, the bulk of her estate in favor of her ultimate disposition to Caranci, whom decedent had known for a relatively short time, we would agree with the trial justice's implicit conclusion that nothing more than speculation existed upon which to ground contestant's claim of undue influence. However, viewing the evidence actually admitted *together with* the excluded evidence in the light most favorable to Howard warrants reversal.

We understand contestant's theory of the case to be that Caranci's alleged control of Phillips's affairs was insidiously accomplished

one step at a time, beginning with his involvement in the Land Trust sale. Moreover, contestant argues that Caranci's actions must be viewed on a continuum culminating with decedent's death, at which time essentially all her real and personal property had passed by operation of law or would pass through probate to proponent. The evidence supports the drawing of a reasonable inference that Caranci's increased involvement with Phillips coincided with his ever-increasing dominion over her and enjoyment of her assets. The contestant's theory stood in marked contrast to the characterization of Phillips throughout the proceedings by both parties as a forceful, alert, confident, and capable person. Unexplained, and potentially of appropriate concern to a jury, was the question concerning how such a person, even in the twilight of her life, could have ceded virtually complete authority over her personal affairs to Caranci, whom she had only known for a short time.

In addition to considering the improperly excluded evidence, we are of the opinion that the evidence that was admitted, specifically, (1) the manner by which Caranci himself took action in estranging from Phillips those people, including Howard and Phillips's original attorney, who had previously provided counsel to her, (2) Caranci's creation of the joint bank account in his and Phillips's names funded by the Land Trust proceeds, and (3) the way in which Caranci was instrumental in getting *his* longtime friend and legal advisor to draft a will for Phillips that left the remainder of her estate to Caranci, all precluded the granting of a motion for judgment as a matter of law. The totality of the evidence admitted and erroneously excluded was arguably probative on the issue of undue influence and could lead a reasonable jury to render a verdict in Howard's favor.

For the foregoing reasons Howard's appeal is sustained, and the judgment entered in the Superior Court is vacated. The papers in the case may be remanded to the Superior Court for a new trial.

BOURCIER, J., did not participate.