Toomey, J.
BACKGROUND
On July 9, 1996, plaintiff filed an amended verified complaint alleging that defendant, her employer, had engaged in sexual harassment resulting in her constructive discharge and had subjected her to the intentional infliction of emotional distress. Defendant sought to dismiss the complaint on a variety of grounds, and, on May 19, 1998, this court (Xifaras, J.) dismissed most of plaintiffs claims. The sexual harassment cause of action fell outside the court’s jurisdiction because it had not first been presented to the Massachusetts Commission Against Discrimination. See, G.L.c. 151B, §5. The claim for the intentional infliction of emotional distress allegedly occasioned by defendant’s conduct in connection with the operations of his office (hereinafter, the “office claim”) was dismissed because it was barred by the exclusivity provisions of the Massachusetts Workers’ Compensation Act. See, G.L.c. 152, §24. Those dismissals left untouched, however, that portion of plaintiffs complaint in which she asserted that she had been tortiously ill-used by defendant on a camping trip to Martha’s Vineyard (hereinafter, the “island claim”).[1]
The matter was called for trial in Taunton Superior Court, and the parties waived their respective rights to a jury. Because of the limiting effect of Judge Xifaras’s disposition of the several motions to dismiss, the trial was narrowed to plaintiffs “island claim” for the emotional distress she allegedly suffered on the 1993 camping trip. The trial position of the defendant was that because the “island claim” was functionally indistinguishable from the “office claim” barred by the Workers’ Compensation Act, the “island claim” too should fail by reason of the Act’s exclusivity. In the alternative, defendant advanced the proposition that, assuming arguendo the inapplicability of the Act’s exclusivity, defendant’s conduct, as alleged in the “island claim,” did not constitute an actionable intentional infliction of emotional distress. At bottom, the alternative defense was that his conduct was not “extreme and outrageous,” that his actions were not the “cause of plaintiffs distress,” and that any emotional distress experienced by plaintiff did not approach the severity (to wit, “no reasonable person could be expected to endure”) necessary to support the intentional interference cause of action. See, generally, Tetrault v. Mahoney, Hawkes and Goldings, 425 Mass. 456 (1997).
As will be discussed in more detail, infra, this court will conclude that the “island claim” is indeed grounded in the employment context because plaintiffs attendance, inter alia, at the company trip was not a “purely voluntary participation in . . . recreational activities.” G.L.c. 152, §1(7A). Hence, her “island claim” for personal injury, to wit, emotional distress, is, as was the “office claim,” precluded by the exclusivity provisions of G.L.c. 152, §24. Having thus determined that the claim is barred by the Act, there will be no occasion to indulge an analysis of the merits of the claim, and, for the present purposes, this court offers no opinion upon either the credibility of the parties or the correctness of their factual allegations as to the occurrence of the camping trip.
FINDINGS OF FACT
1. Plaintiff was hired by defendant’s father in the spring of 1993, and her duties initially consisted of cleaning the premises in which defendant and his father conducted their dentistry practice. Plaintiff rose swiftly in the office hierarchy and was soon serving as a filing clerk and receptionist. When defendant’s father retired from practice — about two months into plaintiffs tenure in the office — defendant retained plaintiff as his office manager, and her duties included scheduling, billing, filing, and preparing the office payroll.
2. During the late spring and summer of 1993, the office staff numbered six to eight, including plaintiff and defendant.
3. In the interests of office morale, and as an expression of gratitude to those who participated in the physical renovation of the defendant’s office, defendant decided to host a camping trip to Martha’s Vineyard in August 1993. The trip — variously described by witnesses as an “office event,” an “office camping trip,” a “company outing,” and an “office trip” — was scheduled for a Sunday through Tuesday. The office would be closed on Monday and Tuesday, days when it ordinarily was open for business.
4. Plaintiff and defendant issued the invitations for the company trip. Only persons serviced by the office, employed by the office, aiding in the renovation of the office, or who were in a relationship with patients, employees, and renovators, were invited. The invitees also included, past employees, the office handymen (carpenters and painters) and their guests.
5. Plaintiff purchased the food to be consumed on the outing and most of the office personnel contributed to the “kitty,” which funded plaintiffs purchases.
6. Defendant paid for the camp site, ferry fares, libations (beer and wine), and shrimp.
*572 7. Although all the invitees did not attend the outing, those who did had significant contact with the office, to wit, defendant (employer), plaintiff (office manager), Kim (defendant’s girlfriend and former employee), Brian (patient and office handyman), Lisa (employee, who decided not to attend just before the group set out from the office), and Tim (office handyman, who linked up with the group on Martha’s Vineyard).
8. Defendant did not explicitly link continued employment or job advancement with any employee’s participation in the camp-out, but he created an atmosphere in which it was reasonable for plaintiff to feel pressured and to be concerned that her employment circumstances might be adversely affected were she not to attend the “office trip.”
9. The outing group assembled at the office and, after loading camping gear and supplies in the defendant’s truck, drove to the ferry on Cape Cod.
10. At the conclusion of the camping trip, defendant drove his three passengers back to his dental offices where they dispersed to their respective homes.
DISCUSSION
The Workers’ Compensation Act considers emotional distress to be a “personal injury” when the distress is predominantly caused by “an event or series of events occurring within any employment.” G.L.c. 152, §1(7A); Robinson’s Case, 416 Mass. 454, 458 (1993). If the distress is so caused, the exclusivity provision of the Act, G.L.c. 152, §24, precludes the injured party from recovery in a suit at law. Doe v. Purity Supreme, Inc., 422 Mass. 551 (1996). The question for this court is whether, on the facts as found, plaintiffs emotional distress — assuming arguendo that she was emotionally distressed and that defendant was the causative agent thereof — was a “personal injury” within the Act. And that question requires a determination as to whether or not plaintiffs distress was precipitated by an event or events “occurring within [her] employment.”
We are guided in the inquiry by G.L.c. 152, §1(7A), which provides that, if the plaintiffs participation in the event which gave rise to her injury was “purely voluntary,” then the injury would not be a “personal injury” compensable under the Act and a civil lawsuit would be available to her. The plain meaning of §1(7A) is that, if the plaintiffs participation in the event was not “purely voluntary,” then the injury would be com-pensable under the Act and a civil lawsuit would, by reason of the exclusivity of remedy provision of the Act (§24), be unavailable to plaintiff.
At bar, the facts, determined after trial, demonstrate that the events of which plaintiff now complains did indeed “occur within [her] employment.” G.L.c. 152, §1(7A). Her instant action is thus procedurally foreclosed by G.L.c. 152, §24, without regard to its substantive merit, if any.
The camping trip was organized by office personnel at the direction of the office employer. All of the invitees were connected to the office as either patients of the office, staff employed (past or present) by the office, renovators of the office, or guests of patients, staff, or renovators. The trip was intended as an expression of gratitude for the renovation of the office and as an effort to advance office morale. The outing was universally referred to as an “office” event. The office employer funded the camping trip, provided the gear, supplied the transportation, made the reservations, and generally served as host. The office premises were the point of embarkation and the point of return. Office personnel contributed to the “kitty” from which the food to be consumed on the camp-out was financed. To suggest that the event did not “occur within any employment, ” G.L.c. 152, §1(7A), is to deny reality. See, generally, Robinson's Case, 416 Mass. 454 (1993); Case of Albanese, 378 Mass. 14 (1979).
That plaintiffs participation was not “purely voluntary" is also strongly suggested by the facts established after trial. Notwithstanding defendant’s forbearance to condition plaintiffs continued employment or advancement upon her participation in the outing, there is ample support in the evidence for the inference that she felt her failure to attend would have an adverse effect upon her job. She testified that she felt “pressured” to go on the outing; defendant told her that she “had to go” in order to persuade Lisa, a co-worker, also to attend. Defendant’s tantrum, when Lisa did not join the group as the trip commenced, was an eloquent, albeit indirect, signal to plaintiff that participation was also identified with her employment as were her clerical duties. And, when plaintiff herself, having returned home prior to the start of the trip because of defendant’s tardiness, was ordered, by an enraged and emotional defendant, to “come to the office,” the conclusion that her attendance was not “purely voluntary,” is compelling. Contrast Gately’s Case, 415 Mass. 397, 400 (1993) (The employer did not coerce, require or pressure the employee’s involvement in the recreational activity, and thus the participation was purely voluntary).
CONCLUSION
Having applied the analytical framework prescribed by Bengston’s Case, 34 Mass.App.Ct. 239, 246-47 (1993), this court concludes that plaintiffs participation in the office “recreational activity" was not “purely voluntary, ” as those terms are employed by G.L.c. 152, §1(7A) in its definition of a compensable personal injury. Her injuries, if any, did arise from “events occurring within [her] employment.” Id. Because, therefore, any emotional distress suffered by plaintiff as a result of defendant’s conduct on the camping trip was compensable via the Workers’ Compensation Act, the instant complaint runs afoul of the exclusivity provision of the Act, G.L.c. 152, §24, and plaintiff cannot obtain recovery in the judicial forum.
*573 Judgment is to enter for defendant upon the “island claim” portion of the complaint.

 Judge Xifaras had concluded that factual disputes existed and needed to be resolved by trial before a determination as to the preclusive effect of the Workers’ Compensaiton Act upon the “island claim” could be reached.