Butler, J.
The plaintiff, Philip Puccia (“Puccia”), has brought suit against the defendant, Roberta Edwards (“Edwards”), for defamation and intentional infliction of emotional distress based on Edwards’s description of him as a “racist" and a “harasser” following a press conference on January 5, 1998. Puccia requests monetary damages, and an injunction to prevent Edwards *186 from further characterizing him as a “racist” or “harasser” on television, radio, or the Internet.[1] Edwards has moved for summary judgment, and filed a special motion to dismiss pursuant to G.L.c. 231 §59H (the “anti-SLAPP” statute). For the reasons discussed below, the defendants’ motion for summary judgment is ALLOWED, without reaching the issue of the applicability of the Anti-SLAPP law.
BACKGROUND
The following facts are viewed in a light most favorable to the plaintiff for the purposes of the defendant’s motion for summary judgment:
At the time of the events in question, Philip Puccia was a public officer of the Massachusetts Bay Transportation Authority (“MBTA”), serving in the capacity of Deputy Manager. Roberta Edwards was also employed by the MBTA as its Chief Administrative Officer. Puccia was involved in the decision to hire Edwards as Chief Administrative Officer in the fall of 1996, and was superior to Edwards in the management hierarchy at the MBTA.
Workplace disputes quickly developed between Puccia and Edwards. The record makes it abundantly clear that Puccia and Edwards had frequent disputes over budgetary and personnel issues during 1997. These disputes do not form the basis of Puccia’s tort claims, and it. is unnecessary to restate the differing versions offered by the parties.
The tension between the two moved to another level during a November 17, 1997 staff meeting. There was a heated discussion. Edwards was upset by the manner in which Puccia spoke to her in front of other MBTA officers present. She called in sick the next day, consulted an attorney, and filed discrimination charges with the Massachusetts Commission against Discrimination. She was then placed on administrative leave by Robert Prince, the General Manager of the MBTA. She was later terminated from her position at the MBTA.
Faced with charges of discrimination from Edwards and other MBTA employees, MBTA officials held a press conference in November 1997 to address the improvements the MBTA had made in dealing with its history of alleged discrimination. A statement on behalf of the MBTA was also made to the press on January 4, 1998. In response, Edwards held a press conference on January 5, 1998, to respond to the statements made by the MBTA.
During the January 5, 1998 press conference, Edwards stated that she had filed a complaint alleging employment discrimination and harassment by MBTA officials. Edwards said that Puccia had attempted to harass and humiliate her by verbally attacking her at the November 17, 1997 staff meeting. She alleged that a number of employees had complained to her of discrimination and harassment, and spoke of a pattern of harassment by Puccia towards her that she claimed was in retaliation for her efforts to protect other MBTA employees who had claimed discrimination. Following her formal statement at the press conference, and after the video cameras were turned off, Edwards continued to speak with reporters. It is at this point that the following statement was attributed to her by at least one newspaper, referring directly to Puccia:
Puccia acts like the MBTA’s pit bull. He tried to embarrass me. He would yell and say that he didn’t have to fund my projects and programs. He was always a difficult person, a racist and a harasser.
The quote was contained in at least one newspaper article that Puccia has attached to his complaint. The same article quotes Puccia directly as denying ever having harassed any employee at the MBTA, and referring to a press release where Puccia called Edwards a “bitter and disgruntled former employee who was justly terminated by the general manager for a conspicuous breach of her management responsibilities." Puccia filed this lawsuit for defamation and intentional infliction of emotional distress shortly after Edwards’s statements appeared in the press.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party has the burden of affirmatively demonstrating that there is no genuine issue of material fact, and that the summary judgment record entitles them to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The record supporting a moving party’s motion for summary judgment must be viewed in a light most favorable to the nonmoving party. Poirier v. Plymouth, 374 Mass. 206, 212 (1978).
1. DEFAMATION
A clem tension exists between an individual’s right to free expression under the First Amendment and Article 16 of the Massachusetts Decimation of Rights, and the protection of another individual’s reputation from libelous and slanderous statements by defamation laws. Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 855 (1975); see also New York Times Co. v. Sullivan, 376 U.S. 254 (1964). In view of this tension between defamation and free expression, the Supreme Judicial Court favors the use of summary judgment in defamation cases. Aldoupolis v. Globe Newspaper Co., 398 Mass. 731, 733 (1986), and in particular, in such cases involving public figures and issues of public interest. Dulgarian v. Stone, 420 Mass. 843, 846 (1995); King v. Boston Globe Newspapers Co., 400 Mass. 705, 708 (1987). Summary judgment is favored because even if a defendant in a libel case is ultimately successful at trial, the costs of litigation may induce an unnecessary and undesirable self-censorship. King v. Boston Globe Newspaper Co., supra at 708.
Puccia bases his claims for defamation and intentional infliction of emotional distress entirely on the *187 following statement attributed to Edwards at a January 5, 1998, news conference:
Puccia acts like the MBTA’s pit bull. He tried to embarrass me. He would yell and say that he didn’t have to fund my projects and programs. He was always a difficult person, a racist and a harasser.
Puccia contends that the characterizations of him as a “racist" and a “harasser” are slander per se, that these statements have seriously damaged his reputation, and that he is prepared to prove, in court, that he is neither a racist nor a harasser.
The first inquiry is whether the alleged defamatory statements are actually statements of fact or statements of opinion. In the present case, Puccia does not base his defamation claim on any particular statements of fact that Edwards has made about the period in which the two worked together at the MBTA. Instead, Puccia focuses on the characterizations of him as a “racist” and a “harasser.” Puccia asserts that he is not a racist, and that the attribution of this epithet to him is a particularly offensive and destructive statement. Further, he claims that the use of the word “harasser” implies that he has committed sexual harassment of Edwards, which was not the substance of Edwards’s MCAD complaint, and therefore was a false implication.
No Massachusetts appellate court has decided the issue of whether an accusation of bigotry, such as “racist” in this case, constitutes actionable defamation or nonactionable opinion. Puccia argues that, because the terms racist and harasser are defined in the dictionary, they have precise meanings that can be either proven or refuted. The Court takes note of the dictionary definitions, but focuses its inquiry on whether the statement is sufficiently factual to be capable of being proven true or false.
Many courts in other jurisdictions that have faced the issue of defamation claims based on accusations of bigotry have held the statements to be nonactionable statements of opinion. See, e.g., Ward v. Zelikovsky, 643 A.2d 972, 980 (N.J. 1994) (accusation that plaintiffs “hated Jews” nonactionable); Stevens v. Tillman, 855 F.2d 394, 402 (7th Cir. 1988) (accusation of racism is not actionable unless it implies the existence of undisclosed defamatory facts). These courts have found that accusations of “racism” have been watered down by overuse, and are susceptible of many different meanings. Stevens v. Tillman., supra at 402. Especially in the aftermath of New York Times Co. v. Sullivan, 376 U.S. 254 (1964), courts have been reluctant to impose liability for name calling, however noisome the epithet. See Buckley v. Littell, 539 F.2d 882, 889 (2d Cir. 1976). See also, Brown v. K.N.D. Corp., 529 A.2d 1292, 1296 (Conn. 1987) (radio broadcaster referring to an assistant ciiy manager as a member of the Ku Klux Klan, or at least a sympathizer, protected from liability). There is no doubt that an unfounded accusation of bigotry is one of the more heinous charges one can make against another person in our society; it is an act that can inflict serious damage to an individual’s reputation. Standing alone, however, such a statement is an opinion.
Massachusetts law is dear that a pure statement of opinion, no matter how derogatory, unjustified or unreasonable, is not actionable. Pritsker v. Brudnoy, 389 Mass. 776, 778 (1983) (radio talk-show host and restaurant critic, who referred to owners of a restaurant as “unconscionably rude and vulgar" and “pigs” did not commit defamation as the statements were nonactionable opinion). A “mixed” opinion, however, is actionable if it may reasonably be understood as implying underlying facts about the plaintiff that are defamatory. Id.
The distinction between actionable (“mixed”) statements of opinion and nonactionable (“pure”) statements of opinion are whether or not the statement is based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication. Pritsker v. Brudnov, supra at 778. The Supreme Judicial Court has stated that expressions of opinion based on disclosed information are protected, because the recipient of such statements will reject the speaker’s opinion if the disclosed information does not warrant the conclusion the speaker has drawn. Lyons v. Globe Newspaper Co., 415 Mass. 258, 262, 267 (1993). Whether or not an opinion is actionable, therefore, turns on whether a reasonable listener hearing the statements could conclude that the statements were based on undisclosed defamatory facts.
Edwards’s statements were made in the context of a press conference in regard to an employment discrimination claim she had filed with the MCAD. There were no implied defamatory facts here, because Edwards had discussed her reasons for believing Puccia to be a racist and a harasser. During the January 1998 press conference, Edwards stated that she had filed a complaint alleging employment discrimination and harassment by MBTA officials. Edwards alleged that Puccia had attempted to harass and humiliate her by verbally attacking her at the November 17, 1997 staff meeting. She alleged that a number of employees had complained to her of discrimination and harassment, and spoke of a pattern of harassment by Puccia towards her. Puccia does not base his defamation on any of these factual allegations. Instead he focuses strictly on the two words “racist” and “harasser.”
Looking at the totality of the circumstances, the characterization of Puccia as a “harasser” was also made in the context of the employment dispute that was the subject of the press conference. Puccia has argued that this statement necessarily carries the implication that he is a sexual harasser. However, looking at the context in which the statementwas made, no one could conclude that Edwards has made that claim.
Even if Edwards’s statements were not pure opinion and were actionable, Puccia, as a public official, must show that they were made with “actual malice.” Stone v. *188 Essex County Newspapers, Inc., 367 Mass. at 867. Actual malice is demonstrated by a showing that the defamatory statement was made with knowledge that it was false or with reckless disregard of whether it was false. Id., citing New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). In light of free speech concerns, a public official must prove actual malice by clear and convincing evidence; this high standard requires the proof be strong, positive and free from doubt. Stone v. Essex County Newspapers, Inc., supra at 870-71.
Whether a plaintiff is a public official or public figure is a question of law for the court to determine when all of the facts bearing upon the issue are uncontested by the parties. Stone v. Essex County Newspapers, Inc., supra at 863. The facts of Puccia’s status are, essentially, undisputed. Puccia is a political appointee at a public agency with a high public profile. He is a public figure. Further, the issue of discrimination at the MBTA has been a matter of significant public interest, evidenced, inter alia, by the MBTA issuing a press release on the topic and by the interest in Edwards’ statements at the January 1998 press conference. Applying the high standard requiring proof of actual malice, summary judgment is appropriate to resolve this case.
2. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
Included with Puccia’s defamation claim is a claim of intentional infliction of emotional distress based on fee same statements by Edwards. To prevail on a claim of intentional infliction of emotional distress, Puccia must show: (1) feat Edwards intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of her conduct; (2) feat her conduct was extreme and outrageous, beyond all bounds of decency and utterly intolerable in a civilized community; (3) feat her actions were fee cause of Puccia’s distress; and (4) feat Puccia’s emotional distress was severe and of such a nature feat no reasonable person could be expected to endure it. Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997). It is insufficient to establish liability under this tort on “mere insults, indignities, threats, annoyances, petty oppressions or other trivialities.” Id., quoting Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987).
Granting that the statements by Edwards were extremely offensive and insulting to Puccia, his claim must fail as a matter of law. The freedom to criticize public officials, even in strong language, is the hallmark of a free, decent, civilized and democratic society. King v. Globe Newspapers Co., supra at 709. Puccia’s claim of intentional infliction of emotional distress, based on the same statements as the defamation claim, must also be dismissed.
Because fee record is sufficiently clear to resolve this case on fee merits, it is not necessary to resolve fee applicability of fee Anti-SLAPP law, G.L.c. 231 §59H, to these facts.[2] Puccia has also claimed feat fee special motion to dismiss has limited the record to support, and oppose, the motion for summary judgment. Further discovery will not change the issue of whether fee statements in question are actionable, however.
Puccia has also requested an injunction to stop Edwards from calling him a “racist” or “harasser,” on television or radio, or in newspapers or on fee Internet. Puccia claims feat injury to his reputation is ongoing by Edwards’s public statements, and that these statements also taint the pool of any jurors he would eventually receive at a trial. The request for an injunction to stop an individual from speaking on a particular matter is an extraordinary remedy, however, and not one lightly granted.[3] Puccia’s stated justification for such a request is to protect his interests in a future employment discrimination case. That is a matter to be addressed wife when feat case eventually comes to a trial.
In conclusion, the statements Edwards made at the January 1998 press conference were nonactionable opinion. For similar reasons, Edwards’ statements were not so extreme and outrageous as to constitute fee intentional infliction of emotional distress.
ORDER
Based on fee foregoing, it is hereby ORDERED that the defendant’s motion for summary judgment be ALLOWED.

 Puccia makes this request in anticipation of a trial on Edwards’s employment discrimination claims against the MBTA and the possibility of a jury pool overly influenced by Edwards’ public statements on the dispute.

 “SLAPPS” [Strategic Lawsuits against Public Participation] are by definition meritless suits, intended to thwart public petitioning activities. Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 161-65 (1998). It is not at all clear that Edwards’s press conference about her discrimination claim against the MBTA is the sort of petitioning activity that the Anti-SLAPP law was intended to cover.

 Mr. Justice Holmes, with Justice Brandéis in concurrence, stated the oft-quoted principle in his dissent in Abrams v. United States, 407 U.S. 17, 22 (1919), a prosecution for conspiracy and for using disloyal and scurrilous language against the United States in the midst of World War I:
But when men have realized that time has upset many fighting faiths, they may come to believe even more than they believe the very foundations of their own conduct that the ultimate good desired is better reached by free trade in ideas — that the best test of truth is the power of the thought to get itself accepted in the competition of the market, and that truth is the only ground upon which their wishes safely can be carried out. That at any rate is the theory of our Constitution. It is an experiment, as all life is an experiment. Every year if not every day we have to wager our salvation upon some prophecy based upon imperfect knowledge. While that experiment is part of our system I think that we should be eternally vigilant against attempts to check the expression of opinions that we loathe and believe to be fraught with death, unless they so imminently threaten immediate interference with the lawful and pressing purposes of the law that an immediate check is required to save the country.