Kinder, C. Jeffrey, J.
INTRODUCTION
This is a defamation action arising from statements concerning Robert Delle (“Delle”), published by the Worcester Telegram & Gazette (“T&G”). Delle avers that these statements were libelous and that he has suffered economic harm and personal injury as a result of their publication. Before the court is Delie’s *240 Second Motion to Amend his Complaint and the T&G’s Motion to Dismiss. For the reasons that follow, Delle’s motion is DENIED and the T&G’s motion is ALLOWED.
BACKGROUND
The following facts are taken from the proposed Second Amended Verified Complaint and treated as true for the purposes of this motion only. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).
A. The April 29, 2011 Article
On April 28, 2011, Delle spoke with an unknown caller by telephone. During the ensuing conversation, the caller asked questions about Delle’s views of President Barack Obama’s citizenship and the authenticity of President Obama’s birth certificate. The tone of this conversation was confrontational, and Delle hung up on the caller after approximately thirty seconds.
On April 29,2011, the Worcester Telegram & Gazette (“T&G”) published an article entitled “Birther’s True Colors Showing.”[1] The author of that article, Clive McFarlane (“McFarlane”), was the person who had called Delle the previous day. The article stated that Delle was “a Worcester lawyer and birther.” The article alleged that Delle had said, during his conversation with McFarlane, that the posting of President Obama’s birth certificate “hasn’t changed anything” in terms of Delle’s views of President Obama’s citizenship status. The article further stated that Delle believes President Obama to be a Muslim.
According to the Complaint, all of the foregoing allegations published in the article are false. Delle is not a birther, and did not tell McFarlane that the posting of President Obama’s birth certificate “hasn’t changed anything” for him. In fact, Delle said the opposite — that he could not reach any conclusions about the authenticity of President Obama’s birth certificate until he had a chance to study it. Delle does not believe President Obama to be a Muslim and said nothing to McFarlane to indicate otherwise.
The article continued with a segue into statements of opinion. Specifically, the article stated that “(c)ontr-ary to what [Delle] and others like him may say, [McFarlane] believe[s] that the birther movement has nothing to do with the president’s citizenship . . . No, this birther movement is mostly about the president’s race . . . some people will simply not accept his legitimacy to hold the highest office in the land.” The article then stated that no one would entertain questions about President Obama’s citizenship “if the president were white.” The article then expounded on those assertions with further statements suggesting that the birther movement is rooted in racial hostility to African-Americans, born of “the group’s deep concern about the changing demographics of the country.”
Delle claims that these opinions can be reasonably understood to imply that he hates and disrespects people of color.
B. The November 21, 2011 Website Comment
On November 21, 2011, the T&G published an article on its website concerning a lawsuit in which Delle was involved as counsel. A section for comments followed the article, in which readers were free to leave anonymous statements and responses. All such comments are screened by the T&G before they are visible to the public in the comments section. Comments flagged as abusive can be removed by the T&G.
One comment posted in connection'with this article stated that “there was no bigger dope than Delle.” Delle alleges, “[u]pon information and belief, the comment was published by an employee and/or agent of the [T&G] for the purpose of causing embarrassment, humiliation, and ridicule of [his] professional abilities.”[2] Delle flagged this comment and requested that it be removed. An agent of the T&G assured Delle that it would be, but the comment was not taken down.
DISCUSSION
“While a complaint attacked by a motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the ‘grounds’ of his entitle[ment] to relief requires more than labels and conclusions. Factual allegations must be enough to raise the right to relief above the speculative level. . . [based] on the assumption that all the allegations in the complaint are true.” Iannacchino, 451 Mass. at 636, quoting Twombly v. Bell Atl. Corp., 127 S.Ct. 1955, 1965 (2007) (alterations in original).
A. The April 29, 2011 Article
The T&G argues that the article was not defamatoiy, inasmuch as nothing stated in it would damage Delle’s reputation in the community. Alternatively, the T&G contends that if the article could be seen to damage Delle’s reputation in the community, it consists ofnonactionable statements of opinion and Delle’s claim still fails.
The article explicitly, and falsely for the purposes of this motion, identified Delle as a birther. The article then described the birther movement, to which it asserted Delle belonged, as having “nothing to do with the president’s citizenship . . . No, this birther movement is mostly about the president’s race . . . some people will simply not accept his legitimacy to hold the highest office in the land.” The article continued, asserting that there would be no questions about President Obama’s citizenship if he were white. Lastly, the article implied that the birther movement’s concerns were really the product of discomfort with the changing demographics of the United States, suggesting that birthers harbor an aversion to nonwhites.
These insinuations had the effect of lowering Delle’s reputation in the community. “[A]n . . . accusation of bigotry is one of the more heinous charges one can make against another person in our society; it is an act that can inflict serious damage to an individual’s reputation.” Puccia v. Edwards, Civil Action 98-0065, 1999 WL 513895, at *3 (Mass.Super.Ct. Apr. 28, 1999) *241 (Butler, J) [10 Mass. L. Rptr. 185]. See also Joseph R. Nolan & Laurie J. Sartortio, Tort Law, §7.2 (2005), and cases cited (“The emotions, prejudices, and intolerance of the community — mankind, warts and all — must be considered in determining the effect of the publication”).
“Standing alone, however, such a statement is an opinion.” Puccia, 1999 WL 513895 at *3. Where a speaker offers an opinion, but does not suggest that additional undisclosed facts support that opinion, no claim for defamation lies. Contrast Scholz v. Boston Herald, Inc., Civil Action No. 10-4069 (Suffolk Super.Ct. Sept. 10, 2010) (Cratsley, J.) (denying motion to dismiss where defamatory article “could reasonably be understood as implying the existence of additional undisclosed facts concerning” the plaintiff). Compare National Ass’n of Gov't Emps./Int’l Bhd. of Police Officers v. Buci Television, Inc., 118 F.Sup.2d. 126, 131 (D.Mass. 2000). Bud arose from a publication by the Boston Globe describing statements by Ken Lyons, a talk show host, as “tinged with anti-Semitism.” Id at 128. Lyons had publicly said that the mayor of Newton had made an unreasonably high settlement offer to a citizen involved in litigation against Newton, solely because that citizen was Jewish.
The Bud court held that the Globe’s article was not actionably defamatory, explaining that “Massachusetts law protects an opinion, framed as a factual assertion, that discloses or implies its non-defamatory factual basis.” Id at 130. The court placed special emphasis on the fact that the article introduced its accusation of anti-Semitism with the word “suggested,” which in the court’s view “cautioned the readers that [a] subjective interpretation of Lyons’s motivation for opposing the settlement, not a factual assertion, would follow.” Id at 131. In addition, the court observed that “the interpretation of another’s motive does not reasonably lend itself to objective proof or disproof,” making a charge of antiSemitism an inappropriate foundation for a defamation claim. Id
So too here. The T&G article prefaced its accusation of racism with the word “believe.” In addition, the contested insinuation that Delle was racist centered on McFarlane’s interpretation of his motives.
For all these reasons, Delle has failed to state a claim in Count I of his proposed Second Amended Verified Complaint, and his Motion to Amend will be denied as futile. See Manfrates v. Lawrence Plaza Ltd. P’Ship, 41 Mass.App.Ct. 409, 413 (1996).
B. The November 21, 2011 Website Comment
Under the terms of the Telecommunications Decency Act of 1996 (“the Act”), the T&G cannot be held liable for comments posted to its website. Congress’s policy goal in enacting the Act was to avoid deterrence of “harmful online speech through the . . . route of imposing tort liability on companies that serve as intermediaries for other parties’ potentially injurious messages.” Universal Commc’n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007).
The Act provides that “[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.” 47 U.S.C. §230(c)(l). Furthermore, the Act declares that “[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.” 47 U.S.C. §230(e)(3).
“[W]eb site operators, such as [T&G], are providers of interactive computer services within the meaning of [the Act].” Universal, 478 F.3d at 419. The Act defines an information content provider as “any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service” Id, quoting 47 U.S.C. §230(f)(3). Thus, a third-party user of a website, who posts statements on it, qualifies as an “information content provider” under the broad definition given to that term in the Act. Id.
Accordingly, the T&G cannot be held liable for the statements of a third party on the comments section of its website. That Delle brought these statements to the attention of the T&G by flagging them and requesting that they be removed does not change this result. See id. at 420 (“It is, by now, well established that notice of the unlawful nature of the information provided is not enough to make it the service provider’s own speech”).
Seemingly conceding this point, Dell’s Motion to Amend seeks to revise his First Amended Complaint by adding an allegation in his proposed Second Amended Complaint that it was an employee or agent of the T&G that posted the defamatory comment about him. It is true that under the Act, “an interactive computer service provider remains liable for its own speech.” Id at 419.
However, Delle’s allegation rests on unspecified “information and belief.” It is entirely devoid of detail or elaboration. Thus, it amounts to no more than the “labels and conclusions” that are insufficient to establish a plausible entitlement to relief under the recently-revised standard governing motions to dismiss. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (construing cognate Federal Rule of Civil Procedure and holding that “naked assertions devoid of further factual enhancement” are insufficient to establish a plausible entitlement to relief).
For all these reasons, Delle has failed to state a claim in Count II of his proposed Second Amended Verified Complaint, and his Motion to Amend will be denied as futile.
CONCLUSION AND ORDER
For the foregoing reasons, Delle’s Motion to Amend is DENIED and the T&G’s Motion to Dismiss is ALLOWED.

The term “birther” refers to people who believe that President Obama is not a natural-bom citizen of the United States, and for that reason is ineligible to hold the office of President of the United States.

At oral argument on the Motion to Dismiss, Delle stated that the basis for his belief that an agent of the T&G posted the comment was that he had been told that newspapers *242 sometimes cause their agents or employees to post comments on articles the newspapers have published on the internet. He declined to identify who told him this, and conceded that the information did not pertain to this article, or to the T&G.